## Ex parte CLYDE MEADOWS.

No. A-9869.    Oct. 2, 1940.

(106 P. 2d 139.)

Hulsey & Hulsey and W. N. Redwine, all of McAlester, for petitioner.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for respondent.

JONES, J.   The petitioner, Clyde Meadows, filed his original application for a writ of habeas corpus before this court, in which he alleges that he is unlawfully imprisoned at the State Penitentiary under a void judgment and sentence pronounced against him by the district court of Comanche county, Okla., on April 30, 1932.

The petition, in substance, alleges that the petitioner was sentenced on April 29, 1932, by the district judge of Tillman county, Okla., to serve a term of seven years in

the State Penitentiary; that after the sentence had been pronounced against the petitioner, the sheriff of Tillman county committed the petitioner to the custody of the sheriff of Comanche county, and was by the sheriff of Comanche county taken to Lawton, in Comanche county; and on April 30, 1932, was arraigned before a justice of the peace on a complaint charging the petitioner with the crime of robbery with firearms. That on the said arraignment, the justice of the peace demanded that petitioner immediately plead to said complaint. That said justice of the peace did not advise the petitioner of the nature of the charge filed against him, and did not inform petitioner of his statutory and constitutional rights to have the benefit of counsel before entering his plea to said complaint, and did not inform petitioner of his right to a reasonable time in which to plead to said complaint or of his right to a preliminary hearing before said justice of the peace; and this petitioner did not waive and was not asked to waive any of his said statutory or constitutional rights. That the petitioner was illiterate, ignorant, and entirely uninformed as to court procedure or as to his rights in the premises, and was under the impression that there was nothing for him to do but plead guilty, which he did do; and upon making such plea, he was immediately held for trial in the district court of Comanche county without bond.

The petition further alleges that on the same day, to wit, April 30, 1932, the petitioner was taken before the judge of the district court of Comanche county and was arraigned on an information charging the crime of robbery with firearms. That said arraignment was only a few minutes after he had been bound over to the district court by the justice of the peace. That it was then demanded of him that he enter his plea to the information filed

against him. That the district court did not advise the petitioner of the nature of the alleged crime, and he was not served with a copy of the information, together with a list of the witnesses to be used in chief against him; did not advise this petitioner of his right to benefit of counsel and did not appoint counsel to represent him, and did not inquire of your petitioner if he desired to waive such statutory and constitutional rights; and that your petitioner did at that time plead guilty to said information, whereupon the district judge, without appointing a time, at least two days after plea had been entered, and without inquiring of the petitioner if he waived such right, and without the petitioner waiving such right, the court immediately pronounced sentence, committing this petitioner to serve a term of 40 years at hard labor in the State Penitentiary; and the petitioner was taken on the same day to the State Penitentiary at McAlester, Okla., and delivered to the warden thereof, who has held him in custody since that date.

The petition further alleges that the petitioner served the sentence pronounced against him in Tillman county on December 17, 1935, and that he has been unlawfully restrained in prison since that date by reason of the void judgment and sentence pronounced against him in Comanche county.

The petition prays for the immediate discharge of the petitioner.

Attached to the petition is a copy of the complaint filed before G. W. Horne, justice of the peace for Lawton city district in Comanche county, wherein it is alleged that the petitioner, together with one Glen Wilkerson and Lottie DeWoody, committed the offense of robbery with firearms in Comanche county on April 27, 1932. The complaint is marked filed April 30, 1932, and on the same date the following order was indorsed on said complaint:

"April 30, 1932, the within named defendants arained entered plea of guilty was by me held to answer the same in the district court of Comanche County, Oklahoma, without bond, was by me committed until such time as they may be tried in said court,

"G. W. Horn, Justice of the Peace."

The information was filed against the same three defendants, alleging the same offense as stated in the preliminary complaint, and is marked filed April 30, 1932.

The judgment and sentence attached to the petition reads as follows:

"Now, on this 30th day of April, 1932, being one of the regular judicial days of the March, 1932, term of said district court, the above-named defendant, Clyde Meadows, appeared and is present in person before the bar of said court for arraignment upon the charge contained in the information in said cause, and thereupon said Information was read to said defendant Clyde Meadows and he was asked by the court whether he is guilty or not guilty of the crime charged in said Information. And thereupon the said Clyde Meadows defendant in said cause, voluntarily and in open court says he is guilty of the crime of robbery with firearms as charged in the information, and

"Thereupon the said defendant is asked whether or not he has any just cause to show why judgment and sentence for said crime should not be pronounced against him and the defendant failing to show any just cause, the court accepted said defendant's plea of guilty as charged in said information, find the defendant guilty as charged therein.

"It is therefore, ordered, adjudged and decreed by the court that said defendant Clyde Meadows for the crime by him committed be sentenced to serve a term of Forty (40) years at hard labor in the State Penitentiary located at McAlester in the State of Oklahoma, from and after his delivery to the warden thereof and that he pay all costs of this prosecution, taxed at $96.

"It is further ordered by the court that the said defendant be committed to the custody of the sheriff of Co-

manche county until said sheriff or someone designated by him shall transport said defendant to the penitentiary, located at McAlester, Oklahoma, when said sheriff shall deliver said defendant to said warden or the person designated by him, to be by said warden held and confined in said penitentiary at hard labor for a period of forty (40) years, from and after his delivery to the warden thereof.

"It is further ordered by the court that the clerk of this court make two certified copies of this judgment and deliver same to said sheriff, one of which shall be his warrant and authority for keeping said defendant in his custody until he or someone designated by him shall transport him to said penitentiary and for the delivery of the defendant to said warden and the other of which he shall deliver to the warden or keeper of said penitentiary which shall be his warrant and authority for the detention and confinement of said Clyde Meadows in said penitentiary as herein directed.

"It is further ordered that said sheriff make due return of how he executed this judgment."

The warden of the State Penitentiary has filed his return and response to the petition, in which he admits that the said Clyde Meadows is being imprisoned in the State Penitentiary on account of his conviction in the district court of Comanche county under the judgment and sentence, a copy of which is attached to the petition.

The response alleges that the petition does not state facts sufficient to warrant the release and discharge of the petitioner; and the respondent further denies each and every material allegation contained in said petition, except such as is admitted by the return. A copy of the judgment and sentence, which is the authority of the warden for the imprisonment of the said Clyde Meadows, is attached to his response. It is an exact copy of the judgment and sentence attached to the petition filed herein.

On June 19, 1940, the petitioner appeared before this court and testified to substantially these facts: That he

was born in Oklahoma and had been in Oklahoma all of his life; that he was 20 years old at the time of the commission of the offense of robbery with firearms in connection with the robbery of the bank at Indiahoma, in Comanche county, on April 27, 1932; that he had never been in jail before he was arrested at that time; that after the bank was robbed on April 27th, he and his companions held up a farmer in Tillman county, and took his automobile away from him, and fled into Texas; that they were caught in Texas and returned to Tillman county, where they were charged with the offense of robbery with firearms; that they pleaded guilty and were sentenced by the district judge of Tillman county to a term of seven years in the State Penitentiary; that the sheriff of Comanche county came over to Frederick and took him and his codefendants back to Lawton; that they stayed all night in jail on April 29th; that the next morning they were taken before the justice of the peace who read a paper to them charging them with robbery with firearms; that they pleaded guilty before the justice of the peace; that a few minutes later they were taken before the district judge; that they were never furnished with a copy of the complaint before the justice of the peace nor with a copy of the information filed against them in the district court, and that it was not read to them in the district court; that no copies of the names of the witnesses to be used against them were ever served upon them; that when they were taken before the district judge, the judge ordered them to stand up and asked them if they were guilty, and he answered, "Yes"; that the judge sentenced him to serve 40 years in the State Penitentiary; that the judge did not explain to him the seriousness of the charge against him, and did not tell him that he had a right to an attorney, and did not appoint an attorney for him; that he did not communicate

with any of his relatives or anybody else while he was in jail at Lawton, but was taken on to the penitentiary about 4 o'clock in the afternoon of April 30th; that he had been in the penitentiary since that time, making a total, altogether, of eight years that he had spent in the penitentiary since his incarceration; that all of the money taken from the bank was fully recovered; that when he was taken before the district court at Lawton, there was no one present except the assistant county attorney, sheriff, and the judge; that he had been as far as the sixth grade in school, and knew nothing about court; that his codefendant was only 17 years of age and received the same sentence.

In support of the response, there was introduced in evidence an affidavit of the county attorney of Comanche county, which reads as follows:

"Dwight Malcolm, of lawful age, having been first duly sworn upon his oath deposes and states:

"That he was county attorney of Comanche county, Okla., at all dates and times mentioned in the foregoing statement; that on the evening of the 26th day of April, 1932, Clyde Meadows, Glen Wilkerson and Lottie De-Woody (a girl) entered the home of A. B. Moore, president of the Bank of Indiahoma, located in Comanche county, and, at the point of gun held the family at point of gun prisoners or hostages throughout the night; that they stated their purpose of robbing the bank and were advised that the time lock would make it impossible to get the safe open until the next morning; that the two men made repeated threats against the members of the family should any of them attempt to escape; that the next morning the three took Mr. Moore to the bank and advised members of the family that Moore's life would be in danger should an alarm be given; that they obtained approximately $1,900 from the bank and were captured later that day, the 27th day of April, 1932, in an adjoining county; they were returned to this county and charges of 'robbery with firearms' were filed against them in the court of Honorable G. W. Horne, justice of the peace,

that they were advised of their rights but manifested their desire to get it over with, inasmuch as they had been under the observation of the entire Moore family for many hours and they knew that their identification and conviction were certain; that they waived hearing before the magistrate and the case was forthwith transmitted to the district court, where they were again brought before the court and the charges again read to them and they were again advised as to their rights by Honorable E. L. Richardson, district judge. The apparent speed of their pleas in the district court was due to the desire of the defendants after they had been fully apprised and were aware of their legal rights. The two men were sentenced to serve a term of 40 years; this sentence was no doubt due to their acts in kidnapping and holding as hostages the Moore family. The girl, Lottie DeWoody, was given a suspended sentence for the reason that she apparently disapproved of such acts of violence as was evidenced by her attempt to persuade the boys to not go through with the robbery."

Also, an affidavit from the district judge reads as follows:

"On this day personally appeared E. L. Richardson, who made oath that he was the district judge of Comanche county, Oklahoma, on April 30, 1932, and as such judge received a plea of guilty from Clyde Meadows, who then stood charged in that court with the crime of robbery with firearms.

"Affiant further says he recalls the circumstances surrounding the plea of guilty and that the defendants were advised of their constitutional rights, and were particularly advised that they might have counsel, and were advised to confer with counsel. As a matter of fact, an attorney was called to the courthouse for the purpose of conferring with them in the event they wished to confer with counsel, and were advised of the presence of the attorney and his willingness to confer. The defendant and his codefendants all stated that they did not wish to confer with counsel, and understood what they were charged with. They were also advised of the punishment that might be inflicted.

"After the advice and refusal, the court inquired of the attending officers who had made the investigation and had them in custody, and after hearing from them as to what had been done the court asked Mr. A. B. Moore, president of the Bank, at Indiahoma, to make a statement. From these statements, it appears that this defendant and his codefendants entered the home of Mr. Moore early in the evening and kept Moore and his family in custody the entire night, and on the following morning one of the defendants remained at the home of Mr. Moore to prevent his wife from communicating with anyone while this defendant carried Moore to the bank and got the money from the bank, and drove back by Moore's residence and picked up his codefendants and proceeded south through Tillman county, where, for some reason, they decided to abandon their car and forced a farmer to give them his car, which they took and proceeded into Texas, where they were arrested.

"After these statements were made; the defendants were asked if they were true and they answered in the affirmative, and the court felt that 40 years was a reasonable punishment, under the circumstances, and from the attitude of the defendants in court."

To refute this affidavit, the petitioner introduced in evidence a letter written to the warden of the State Penitentiary in which the judge stated with reference to the petitioner Clyde Meadows, "The above-named prisoner was sentenced by me several years ago for an offense which I do not now recall."

There was also admitted in evidence a certified copy of the minutes from the records of the court clerk's office showing what occurred in the courtroom at the time of the sentence, as follows:

"And now at this time April 30, 1932, Enter Order, Defendants Glen Wilkerson and Clyde Meadows, are now before the court for arraignment upon the charge of robbery with firearms, and

"Thereupon the information is read and defendants each enters his separate plea of guilty as charged in said information.

"Thereupon enter order sentencing said defendants Glen Wilkerson and Clyde Meadows, to each serve a term of forty (40) years in the State Penitentiary At McAlester, Oklahoma, time to begin at date of delivery to the warden of said penitentiary."

This was a capital offense. The petitioner could have been punished by death in the electric chair. It is undisputed that the petitioner was a minor at the time of the charges filed against him. It is admitted that the preliminary complaint was filed against the petitioner on April 30th, and that on the same day the petitioner was arraigned in district court and sentenced, following his plea of guilty to the information.

It is well settled in this jurisdiction that the writ of habeas corpus will not lie to correct purely procedural errors, and is not designed to interrupt the orderly administration of the laws by a competent court acting within the limits of its jurisdiction. 12 R. C. L. 1192; Ex parte Grant, 32 Okla. Cr. 217, 240 P. 759.

It is also well settled, however, that where the lower court does not have jurisdiction to pronounce the judgment and sentence, the question may be raised in a habeas corpus proceeding. Ex parte Barnett, 67 Okla. Cr. 300, 94 P. 2d 18; Ex parte Hollins, 54 Okla. Cr. 70, 14 P. 2d 243; Johnson v. Zerbst, 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461; Ex parte Parks, 93 U. S. 18, 23 L. Ed. 787.

In the case of Ex parte Barnett, supra, we held that a court's jurisdiction at the beginning of trial may be lost in the course of the proceedings due to the failure to complete the court by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived his constitutional guaranty and whose life and

liberty are at stake. Both the state and federal Constitutions provide that no man may be deprived of his life, liberty or property, without due process of law. Section 1, art. 14, Amendment to Constitution of the United States; Section 13419, O. S. 1931, Okla. St. Ann. Const. art. 2, § 7.

In the case of Ex parte Barnett, supra, Judge Doyle, now Presiding Judge of this court, wrote an interesting and well-reasoned opinion. The leading cases from this state and the United States Supreme Court bearing on this question are set forth and discussed at length in that opinion; the conclusions arrived at therein apply with equal force to the case at bar, and a repetition of the statements therein made would only unduly lengthen this opinion, and the same will not be set forth herein.

Certain principles of law have become definitely established by reason of that opinion:

"Under Bill of Rights, sec. 20, Okla. St. Ann. Const., an accused has the right to consult with counsel and to be fully advised as to his rights, and as to the consequences of his act before entering his plea to the indictment or information."

"A plea of guilty should be entirely voluntary, and should be made by one competent to know the consequences thereof, and should not be accepted until after the defendant has been fully advised by the court of his rights and the consequences of his plea."

"When a person is held in custody under a void order of commitment, or is imprisoned without due process of law under the sentence of any court of the state, it is not only within the authority of this court, but it is its duty upon habeas corpus to inquire into the illegality of the commitment when the matter is properly brought before it by petition, and if it be adjudged that the order of commitment was made without authority of law, the person will be entitled to a discharge from custody in order to

preserve the constitutional right of all persons not to be deprived of liberty without due process of law."

"A person prosecuted for a crime may waive the rights guaranteed to him by Bill of Rights, relating to trial by jury, right to be heard by counsel, etc."

"Courts indulge every reasonable presumption against a waiver of fundamental constitutional rights, and do not presume acquiescence in their loss."

"Whether one accused of crime has waived his right to the assistance of counsel for his defense must depend in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

"Habeas corpus is an available remedy to one who has, without having effectively waived his constitutional right to the assistance of counsel, been convicted and sentenced and to whom expiration of time has rendered relief by an application for a new trial or by appeal unavailable."

"One charged with crime is as much entitled to assistance of counsel in preparing for trial, as at the trial itself."

"In a felony case, where the defendant is unable to employ counsel and is incapable adequately of making his own defense because of ignorance, feeble-mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law."

"A judgment of conviction of one who did not effectively waive his constitutional right to the assistance of counsel for his defense is void as having been rendered without jurisdiction."

The facts herein are more strongly in favor of the petitioner than they were in the Barnett Case, supra. Here we have a minor, uneducated, inexperienced, and charged with a capital offense. The judge in his affidavit states that he advised the petitioner of his right to counsel, but that the petitioner did not wish to confer with counsel.

The minutes of the court should reflect what occurred at the arraignment. If counsel is appointed for the accused or if the accused refuses to accept the advice of counsel after being advised of his right thereto by the court, the minutes should so show. The presumption, where the record is silent, is that the offer to appoint counsel was not made. As was stated by the United States Supreme Court in the first paragraph of the syllabus of Johnson v. Zerbst, 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461:

"Courts indulge every reasonable presumption against a waiver of fundamental constitutional rights, and do not presume acquiescence in their loss."

This court realizes that in a great many instances the court clerk neglects to set forth in the minutes all that actually occurred upon an arraignment. We are also quite sure that a great proportion of those who are incarcerated in the penitentiary would be willing to swear to almost anything to secure their release. But with a knowledge of these conditions, it still appears to us in the instant case that the court and the county attorney were too hasty in trying to get this minor off to the penitentiary. However worthy the motives of the prosecution might have been, it is always better in a capital case to wait at least two days before pronouncing sentence where the accused has waived his right to the assistance of counsel.

In Sutton v. State, 35 Okla. Cr. 263, 250 P. 930, 934, it is said:

"It is true that many constitutional guaranties may be waived by an accused person who comes into court represented by counsel and being fully advised of all his rights, and in such cases it might be said that he waives a right for which he does not ask. However, the record in this case shows that appellant did not waive any constitutional or statutory right, except in so far as his plea

of guilty waived his right to be tried by a jury. In our opinion the constitutional right to be represented by counsel and the right in capital cases, at least two days before the case is called for trial, to be furnished with a list of the witnesses, together with their post office addresses, are essential to due process of law guaranteed to the citizen by section 7, Bill of Rights. We are inclined to think that a conviction had by a denial of these constitutional rights simply amounts to judicial lynch law."

Where the offense charged is a capital one and the accused is young, illiterate, and inexperienced in court matters, the court should proceed with caution. The caution to be exercised, of course, depends upon the gravity of the offense charged. In this connection, we wish to state that no general, abstract rules can be set forth which will apply to every case, but that the question as to whether or not the judgment and sentence has been passed in conformity with the Constitution and statutes depends upon the facts in each particular case. Our opinion is that the judgment and sentence rendered against the petitioner by the district court of Comanche county on April 30, 1932, is void, and should be vacated and set aside.

With this conclusion established, the question now arises as to whether or not the accused is entitled to an unqualified discharge. In his petition herein, the accused asks that the judgment and sentence be vacated, and that he be fully and finally discharged from the penitentiary.

It is true that this court has heretofore in several cases upon the issuance of a writ of habeas corpus given the petitioner an unqualified discharge from his incarceration.

We have now arrived at the conclusion that where questions raised in the petition concern the matter of the denial of some of the accused's statutory or constitutional rights in connection with the arraignment and pronounce-

ment of the judgment and sentence against the accused, the proceedings subsequent to the filing of the information in the district court should be vacated; but the accused should be remanded to the district court and there proceeded against the same as if no arraignment had ever been held upon the information filed against him.

This conclusion is sustained by both the federal and state authorities. As was held by the United States Supreme Court in the case of In re Bonner, 151 U. S. 242, 14 S. Ct. 323, 326, 38 L. Ed. 149:

"Much complaint is made that persons are often discharged from arrest and imprisonment when their conviction, upon which such imprisonment was ordered, is perfectly correct; the excess of jurisdiction on the part of the court being in enlarging the punishment, or in enforcing it in a different mode or place than that provided by the law. * * * The judges of all courts of record are magistrates, and their object should be, not to turn loose upon society persons who have been justly convicted of criminal offenses, but where the punishment imposed, in the mode, extent, or place of its execution, has exceeded the law, to have it corrected by calling the attention of the court to such excess."

See, also, Johnson v. Zerbst, supra, and Copeland v. Archer, 9 Cir., 50 F. 2d 836.

In the case of Ex parte Robnett, 69 Okla. Cr. 235, 101 P. 2d 645, 647, this court held:

"A void judgment may be vacated in a habeas corpus proceeding. When the judgment is thus vacated, the proceedings should be remanded to the trial court where the defendant may be tried on the merits of the case pending against him. If the defendant's rights have been prejudiced to such an extent that he cannot have a fair trial by reason of disclosures made at the first hearing or for any other reason, this court may order his release from custody."

This court has, heretofore, in other cases without passing directly upon this question, remanded the petition-

er to the district court for further proceedings. See Ex parte Hollins, supra, and Ex parte Lyde, 17 Okla. Cr. 618, 191 P. 606.

The Supreme Court of Oklahoma in the case of Ex parte Smith, 150 Okla. 98, 300 P. 635, held that where a man is confined in the hospital for the insane and the commitment proceedings are void, he will be released upon a habeas corpus proceeding, but should be delivered into the custody of the sheriff of the county from which he was sent to the hospital, and the proper authorities of that county, upon proper hearing, should determine whether or not he is sane or insane in accordance with the provisions of the statutes for making such investigation and determination.

It is hard to see where a petitioner in a habeas corpus proceeding should be entitled, if his petition is sustained, to an unqualified discharge where, if the same questions were raised on appeal, the case would be remanded to the lower court for a new trial.

In Howington v. State, 30 Okla. Cr. 243, 235 P. 931, the defendant appealed to this court and raised the identical questions which are raised in this proceeding, to wit: That a conviction had been obtained without due process of law. This court, after consideration of the facts therein, reversed and remanded the case with orders to allow the defendant to enter a plea of not guilty. The defendant had entered his plea of guilty to the information, and had appealed to this court from a judgment and sentence imposing the death penalty.

From the foregoing, it is our opinion that the petitioner's conviction was in violation of the rights guaranteed to him by the Bill of Rights of the Constitution, art. 2, and that the proceedings subsequent to the filing of the information against the petitioner in the district court of Comanche county are a nullity.

322

It is, therefore, ordered that the judgment and sentence pronounced against the defendant in cause No. 2218 in the district court of Comanche county and all other proceedings in said court in said cause subsequent to the filing of the information therein be and the same are hereby vacated and set aside.

It is further ordered that the writ of habeas corpus be issued, and the warden of the State Penitentiary at McAlester, Okla. be and is hereby commanded forthwith to deliver into the custody of the sheriff of Comanche county, Okla., the petitioner, Clyde Meadows.

It is further ordered that the sheriff of Comanche county, Okla., hold the said Clyde Meadows pending the disposition of the charge filed against him in cause No. 2218 in the district court of Comanche county or until he is otherwise discharged, as provided by law in such cases.

DOYLE, P. J., and BAREFOOT, J., concur.