## In re WARREN HAZEL.

No. A-10578. March 14, 1945.

(157 P. 2d 225.)

Robert O. Swimmer, of Oklahoma City, for petitioner.

Randell S. Cobb, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for respondent.

JONES, J.  This is an original proceeding in habeas corpus instituted by the petitioner Warren Hazel to secure his release from confinement in the State Penitentiary at McAlester.  Prior to the institution of this action, the petitioner filed his petition for a writ of habeas corpus in the district court of Pittsburg county, in which petition the identical grounds herein presented were alleged and said petition was denied by said district court.

The verified petition filed herein alleges in substance that the petitioner was charged jointly with one Clarence Carpenter, on the 25th day of February, 1944, in the justice of the peace court in the city of Lawton, with the crime of conjoint robbery; that at his arraignment before the justice of the peace, petitioner was not advised as to the nature of the complaint filed against him, was not

advised of his statutory right to have the benefit of counsel, that a copy of the complaint was never served on him, nor was the complaint read to him, nor was he informed that he was waiving any of these rights.

The petition further alleges that at the time he signed an instrument, which he afterwards learned was his purported confession, he was advised by the county attorney that if petitioner would enter a plea of guilty that a charge of robbery with firearms would not be filed, but that a lesser offense which carried no greater penalty than five years' imprisonment would be filed, and that petitioner was told that if he hired counsel and fought the case, there was no telling what he would get.

The petition alleged that petitioner entered his plea of guilty before the justice of the peace on February 25, 1944, because he feared reprisals to his wife, and by fear of receiving a greater sentence and upon the hope that the county attorney would assist him to gain a lighter sentence than he had previously promised him.

That on the 26th day of February, 1944, an information was filed in the district court of Comanche county, and that petitioner was taken before said district judge on said date for arraignment; that petitioner was ignorant of court procedure and was not advised of the nature of the charge filed against him and was not advised that he had a right to benefit of counsel before entering his plea to said information, but that he relied upon the advice of the county attorney as to the nature of the charge against him; that after he entered his plea of guilty, he did not waive time in which to have 48 hours before pronouncement of judgment, but that the district court immediately sentenced him to serve 25 years' imprisonment in the State Penitentiary, following which judgment and

sentence he was immediately transported to the State Penitentiary where he is now incarcerated.

Attached to the petition are certified copies of the criminal complaint filed in the justice of the peace court, the information filed in the district court, and the judgment and sentence pronounced upon the plea of guilty. All of these instruments are identified and made a part of the petition.

A response was filed by the warden of the State Penitentiary in which he denied every material allegation in the petition except that he was holding the petitioner in custody under a commitment from the district court of Comanche county to serve a term of 25 years for conjoint robbery.

At the hearing held before the district court of Pittsburg county, evidence was introduced on behalf of the petitioner and the respondent. A transcript of this evidence was prepared and, by agreement of the parties hereto, this cause was submitted to this court upon the transcript of the evidence had before the district court of Pittsburg county and affidavits attached thereto.

The petitioner testified on direct examination to substantially the same facts as alleged in his petition. On cross-examination, he admitted signing a confession in the county attorney's office, which related the details of the crime of robbery committed by the petitioner and his codefendant, Clarence Carpenter. In this confession signed by the petitioner and sworn to before the court clerk of Comanche county, the petitioner states that he is 23 years of age; that he and the codefendant, on February 23, 1944, were taxicab drivers in the city of Lawton; that early in the morning of February 24, 1944, about 6 a. m., he and Carpenter picked up another man and two girls;

that they were all drinking; that they drove out to the edge of town and stopped; that while they were there, a car approached and the codefendant Carpenter stopped the car and stuck a pistol in the old man's face who was driving the car; that there was no shell in the gun and that Carpenter was just joking with the old man; that Carpenter told the old man he was just joking and for him to drive on, and when the old man started off, the petitioner jumped on the fender, rode about a hundred yards, and then hit the elderly man a time or two and took $15 in money from him.

Apparently, the man who was assaulted by the petitioner and his codefendant reported the robbery immediately to the officers and the petitioner and Carpenter were arrested within an hour or two. Later that same day, each of them signed a confession to the assistant county attorney. The following day, they waived a preliminary hearing before the justice of the peace and were bound over to the district court. The next day, they were arraigned in the district court and entered their plea of guilty to the crime of conjoint robbery.

On further cross-examination of the petitioner, he admitted that the facts in connection with the alleged robbery were substantially as related in the confession which he signed. The Assistant Attorney General then read the affidavit of the district judge who pronounced the judgment and sentence and inquired as to whether the proceedings before the court were as outlined in the affidavit of the judge, to which the petitioner answered, "Well, not altogether," but petitioner did not elaborate as to what parts of the affidavit of the trial judge were incorrect.

The affidavit of the trial judge, after reciting that he was the judge who sentenced the petitioner and his code-

fendant to serve 25 years in the State Penitentiary for the crime of conjoint robbery, further alleged:

"That said defendant, Clarence Carpenter and Warren Hazel, before entering their separate and individual pleas of guilty to said charge, were each fully and carefully advised as to all of their rights as set out in the judgment and sentence in said cause. After the information was read to them, they were carefully and fully advised of their right to counsel and to be advised by counsel and that they were entitled to a fair and impartial trial by jury, and that if they were financially unable to employ counsel the court would appoint counsel to represent them and see that their rights were fully protected and the court also advised them that they would have at least 24 hours and any other reasonable additional time thereafter before they should be required to enter their pleas, one way or the other. Each of them stated that they fully understood their rights to trial by jury and to have the advice of counsel and each stated that he desired to have neither. Also, after the information was read to them, they and each of them, were fully and carefully advised as to the charge, and the nature and cause of the accusation was fully and carefully explained to each of them, as was also the consequences of their plea thereto, and they and each of them separately and individually stated to the court that they fully understood the nature and cause of the accusation and matters set out in the information and the consequences of their pleas, and that they desired to voluntarily waive their right to trial by jury, their right to have counsel and their right as to the time in which to plead and that it was their and each of their desire at that time to enter their respective pleas without counsel and without any further delay whatsoever. The court then asked each of said defendants whether he was guilty, or not, of the crime charged in the information, and each of them said that he was guilty. The court then asked each of them if they actually did what they were charged with doing in the information. Each of them said that he did do the things he was charged with doing therein. The court then accepted said pleas.

"The court heard the testimony of the complaining witness, Luther Cannon, for the purpose of determining matters of either aggravation or mitigation as to the amount of punishment, after the pleas had been entered, and explained to each of the defendants that each of them had a right to cross-examine the witness Cannon, and that the court would be glad to hear any statements from them, or any evidence or facts in their behalf that either of them cared to present to the court going to the question as to the amount of punishment. Both and each of said defendants admitted and stated that the facts as related by the witness Cannon were true, and that the facts and circumstances as related by him were correct, and that they had no evidence to offer or further facts to call to the attention of the court other than the statements which they had already made.

"Thereupon, the said defendants, and each of them, were asked whether or not, they had any just cause, or any reason whatsoever, to show why judgment and sentence for the crime they had committed should not be pronounced against them and each of them, and the said defendants, and each of them, stated that they had no cause nor reason whatsoever to show and the court found them guilty as charged and sentenced them and each of them as above set out.

"Each of said defendants appeared to be of full and mature age and fully intelligent enough to understand all of the proceedings and the nature thereof and there was not the slightest evidence or indication that the court observed anywhere that any pressure was being brought to bear, or any effort was being made by any one, to hasten the proceedings, or to deprive the defendants, or either of them, of any of their rights under the law. The whole proceedings consumed about one hour or more, and the evidence of the witness, Cannon, together with the pleas of guilty and statements of the defendants, and each of them, in open court, showed that the defendants, and each of them, had not only committed the crime of conjoint robbery but had committed it in a very aggravated manner and had not only robbed the said Luther Cannon but in

addition thereto had wilfully and unnecessarily made a vicious and unprovoked assault upon said witness Cannon."

Also included in the record are affidavits from Robert S. Landers, assistant county attorney of Comanche county, and S. R. Harper, assistant county attorney of Comanche county. Their affidavits were substantially identical. They swore that they talked to the petitioner and his codefendant, but that the county attorney, Ralph Cline, was not present and did not ever talk to them; that they explained the nature of the charge which had been filed against them and the penalty which it carried; that each of the accused then made voluntary statements which were reduced to writing and signed and sworn to before the court clerk of Comanche county. They then related the details of the proceedings had upon arraignment before the district court of Comanche county, which were substantially as related in the affidavit of the district judge.

It has been held that courts indulge every reasonable presumption against a waiver of fundamental constitutional rights and do not presume acquiescence in their loss. Ex part Barnett, 67 Okla. Cr. 300, 94 P. 2d 18; Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139. In each of these two cases, however, the judgment and sentence and the minutes of the court were both silent as to whether the petitioner had been advised fully as to all of his statutory and constitutional rights. In the instant case, no such similar situation is presented.

The judgment and sentence recites in part as follows:

"Now on this 26th day of February, 1944, being one of the regular judicial days of the January 1944 term of said district court, the above named defendant Warren Hazel appeared and is present in person before the bar of said court for arraignment upon the charge contained in

the information in said cause, and thereupon said information was read to said defendant, Warren Hazel, and the court explained fully to him the nature and cause of the accusation against him, and the consequences of his plea and also all of his rights, including his right to counsel, to trial by jury and time in which to plead and he states to the court that he desires to voluntarily waive his said rights to trial by jury, to counsel and as to time and desires to enter his pleas at this time and he was then asked by the court whether he is guilty or not guilty of the crime charged in said information. And thereupon the said Warren Hazel defendant in said cause, voluntarily and in open court says he is guilty of the crime of con-joint robbery, as charged in said information, and . . ."

While these recitals in the judgment and sentence are not absolutely conclusive that petitioner was advised of all of his rights as stated in said judgment and sentence, they are entitled to great weight and the burden will be upon any one who assails said recitals to show by clear and convincing proof that they are incorrect. Here we not only have the recitals in the judgment and sentence showing that petitioner was fully advised of his constitutional and statutory rights, but said recitals are further bolstered and supported by the sworn statements of the district judge and the two assistant prosecutors who had charge of the prosecution against petitioner and his codefendant. The proof on behalf of petitioner that he was denied the right to counsel and was not fully advised as to the nature of the charge against him is far from being clear and convincing.

The case herein presented is similar in a great many respects to the case of Ex parte Gault et al., 78 Okla. Cr. 172, 146 P. 2d 133, 136. In that case, the petitioners, Mike Gault and Allen Gault, had entered their plea of guilty to the crime of robbery with firearms in the district court of Beckham county. In their petition for a writ of

habeas corpus, they alleged substantially the same grounds as alleged in the petition filed herein. The language used in that case applies with equal force to the argument herein presented. It was therein stated:

"In the case of Ex Parte Meadows, supra, it is stated:

" 'Under Bill of Rights, sec. 20 (article 2), Okla. St. Ann. Const., an accused has the right to consult with counsel and to be fully advised as to his rights, and as to the consequences of his act before entering his plea to the indictment or information.'

" 'A plea of guilty should be entirely voluntary, and should be made by one competent to know the consequences thereof, and should not be accepted until after the defendant has been fully advised by the court of his rights and the consequences of his plea.'

" 'A person prosecuted for a crime may waive the rights guaranteed to him by Bill of Rights, relating to trial by jury, right to be heard by counsel, etc.'

" 'Whether one accused of crime has waived his right to the assistance of counsel for his defense must depend in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'

"It is established in this jurisdiction that the writ of habeas corpus will not lie to correct purely procedural errors, and is not designed to interrupt the orderly administration of the laws by a competent court acting within the limits of its jurisdiction. Ex parte Grant, 32 Okla. Cr. 217, 240 P. 759; 12 R. C. L. 1192.

"The constitutional provisions guaranteeing to every person in a criminal action certain rights are: First, those in which the public generally, and as a community, is interested, as well as the accused, and which are jurisdictional as affecting the power of the court to try the cause; second, those more in the nature of privileges which are for the benefit of the accused alone, and do not affect the

general public.. The former may not be waived; the latter may.

"Among the legal safeguards which have been adopted for the benefit of the accused, which may be waived, are the following : The right to have twenty-four hours in which to plead after arraignment; the right to be furnished with a copy of the information; the right to forty-eight hours after conviction before sentence may be passed; the right to be confronted by the witnesses; the right to trial by jury; the right to have counsel to represent him; the right to a subpoena for his witnesses. Ex parte Gilbert, 71 Okla. Cr. 268, 111 P. 2d 205.

"The only consideration for this court is whether, under the facts in the instant case, there was an intelligent waiver of these rights. We think this must be answered in the affirmative. After all of the evidence has been sifted, the only contention of the petitioners as to their being misled concerned the amount of punishment which was meted out to them. They contended that they thought that they would secure only twenty-five years in the state penitentiary because of an agreement had with the county attorneys of the two counties involved, and that instead they received a total of forty years imprisonment in the state penitentiary. . . .

"Furthermore, the recommendation of the county attorney was purely advisory to the court and he was in no way bound to follow such recommendation. After hearing a statement of the facts surrounding the commission of the crime, it was the trial court's duty to assess such punishment upon the plea of guilty as seemed to him to be justified.

"Under the facts and circumstances of this case, we do not feel that there has been such a denial of the rights of the petitioners that this court can say that the trial court lost jurisdiction during the course of the proceedings to pronounce judgment upon the plea of guilty."

After considering this entire record, and in accordance with our views heretofore expressed in Ex parte Gault,

supra, above quoted, it is our judgment that the writ of habeas corpus should be denied. However, we wish to again emphasize the duty and obligation which rests upon a district court of this state when one accused of a capital offense is brought before him for arraignment. He should proceed with caution. It would be much better if in every capital case where the accused appears without counsel to assign counsel to consult with him whether requested or not. Courts should be careful and not allow an overzealous prosecutor to cause them to be too hasty in pronouncing judgment. It would be far better, and especially where the petitioner appears without counsel and refuses the offer of counsel extended by the court, to postpone the pronouncement of sentence at least 48 hours after the plea of guilty is entered. As we have herein above stated, the failure of the court to do this will not always constitute a denial of due process of law because these rights are personal to the accused and may be waived by him. However, these rights are so fundamental in their nature that the court should be extremely cautious to see that there has been an intelligent waiver by the accused before proceeding to pronounce judgment.

It follows from the foregoing, especially in view of the fact that the crime herein was not a capital offense, that there was no denial of due process of law in the conviction and commitment of petitioner, and the petition for writ of habeas corpus is hereby denied.

BAREFOOT, P. J., concurs. DOYLE, J., not participating.