### Ex parte JOHN R. COOK.

No. A-10901.   July 9, 1947.

(183 P. 2d 595.)

Geo. C. Crump, of Wewoka, for petitioner.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for respondent.

JONES, J.   This is an original proceeding in habeas corpus instituted by John R. Cook, a minor of the age of 17 years, through his father and next friend, Roy Cook, to secure his release from confinement in the State Penitentiary at McAlester.

The verified petition alleged in substance that the petitioner was arrested about 3 a. m. on January 23, 1947, and placed in jail at Ada, Okla.; that on the same day, a complaint charging the crime of burglary in the second degree was filed in the justice of peace court. That the petitioner was brought before the justice of peace without a warrant having ever issued on said complaint and required to plead to said criminal complaint filed against him in the justice of peace court. That neither the county attorney nor any of his assistants appeared before the justice of peace at the time of his arraignment before the justice of peace, but that the county attorney telephoned the justice of peace that the petitioner wanted to plead guilty. That within a very few minutes after he appeared before the justice of peace, he was taken by the sheriff before the district judge of said county and

required to plead guilty to an information which had just been filed against him. That he does not know nor remember what happened in the district court, and did not know that he was entitled to have counsel to represent him, nor did he know that he was entitled to 24 hours in which to plead to the information and to have a copy of the information filed against him.

The petition further alleged that the officers who had charge of the petitioner were in such a hurry to get the petitioner into the penitentiary, that the transcript of the justice of peace was not certified before filing it in the district court. That after the petitioner was placed in jail, he was denied the right to call his parents who lived in Ada, or communicate with any of his friends. That the only persons he was permitted to talk to were officers and the owner of the store he was alleged to have burglarized, who advised him to go ahead and plead guilty and it would be easier on him to do so. That petitioner was only 17 years of age and had reached the seventh grade in school. That he had never been convicted of any crime and was wholly ignorant of his rights and by reason of his youthfulness and ignorance, he did not understand the nature and consequences of his plea. That after a plea of guilty was entered, the district judge sentenced him to serve the maximum term of seven years' imprisonment in the State Penitentiary, and he was immediately transported to the penitentiary by the sheriff. The petitioner further alleges that the judgment and sentence was void because of the failure of the court to protect the constitutional rights of defendant in the premises.

The response of the warden stated that he was detaining and imprisoning the petitioner, John R. Cook, in the State Penitentiary by reason of the judgment and sen-

tence pronounced by the district court of Pontotoc county, on January 23, 1947, after he was convicted in said court for the crime of burglary in the second degree and the said petitioner was sentenced to serve a term of seven years at hard labor.

Prior to the filing of the petition in this court an application for a writ of habeas corpus was presented to the district court of Pittsburg county. The petitioner, his father, and one other witness appeared before the district court and testified at length concerning the allegations of the petition. A transcript of such testimony was prepared and admitted in evidence before this court in support of the petition at the time said petition was heard. The district judge and assistant county attorney of Pontotoc county also appeared before the Criminal Court of Appeals at the time of said hearing and testified to what occurred at the time of the arraignment and plea of the accused. In addition, this court permitted affidavits of the chief of police and the county jailer to be filed which affidavits related some of the occurrences in connection with the arrest and plea of guilty entered by the petitioner.

The proof of the petitioner showed that he was 17 years of age on December 3, 1946. That his father had lived near Ada for the past 20 years, during which time he had been a pumper for an oil company. That the father of petitioner did not learn of his arrest or that he had been sentenced to the penitentiary until he read about it in the newspaper the next morning after the boy had been sentenced to the penitentiary. That the petitioner had never been convicted of any crime. That he had sworn falsely to his age in order to enlist in the United States Army, but that when his age was discovered, he was given a discharge. That the petitioner then re-enlisted in the army with his

mother signing for him. That he was in the army at the time of the commission of the alleged crime, but was on furlough at the time it was committed. The petitioner testified that he was 17 years of age and had finished the seventh grade in school. That he had never had any experience in the courtroom and did not know when he was brought before the court what he should do. That he was arrested with one Claude Cobb who was about 24 years of age, at Shawnee, Oklahoma, about 3 o'clock in the morning of January 23, 1947. That he was later taken to the city jail at Ada, Okla. That he remained in the jail until about 2:30 p. m. on that day. That he requested the chief of police three different times to allow him to use the telephone to call his father, but that the chief of police told him that he, the chief of police, had already told his father about it, and that he was not allowed to use the telephone. That he had been drinking intoxicating liquor. That he talked to the assistant county attorney who told him he could plead guilty immediately to breaking into the jewelry store or otherwise he would have to wait until the next term of court. That he was taken before the justice of the peace who asked him if he was going to waive preliminary hearing, and he answered, "I guess so". That after he was taken before the justice of peace, he was taken back to jail where he remained about five minutes before being taken before the district judge. That they there read something to him but he did not know what it was and the district judge said he had 24 hours to plead. That he was not told the penalty for the crime charged against him and was not advised that he could be furnished a lawyer if he wanted one. On cross-examination, he testified that on the night of January 23rd, he met Claude Cobb in a beer parlor. That after drinking some beer, he went with Claude to the Gem Jewelry store where they

broke in a window and took some jewelry. That Cobb then stole an automobile and they got in it and left, but were arrested in Shawnee for speeding. The jewelry which was taken was found in the car and they were returned to Ada early in the morning.

The assistant county attorney testified that he talked with the petitioner and his codefendant, Claude Cobb, in the afternoon of January 23, 1947. That they both seemed anxious to plead guilty to burglary of the jewelry store in order to escape prosecution for automobile theft. That he advised them that if he could get hold of the district judge that afternoon he would try to arrange for them to enter their plea of guilty at once. That the petitioner told him he was 17 years of age but he did not inquire as to where his parents lived. That he called the district judge and told him he had two defendants who wanted to plead guilty to the charge of burglary and asked whether he could remain in his office until the prisoners could be brought before him. That he then prepared the preliminary complaint and sent it over to the justice of peace office along with the prisoners. That the petitioner and his codefendant waived preliminary hearing and he immediately filed an information in the district court. That the petitioner and his codefendant, Claude Cobb, were then brought before the district judge. That he, the assistant county attorney, read the information in open court to the prisoners. That the court then advised each of the prisoners the nature of the crime and of their right to counsel and that the court would appoint a lawyer for them if they were not able to hire one. That the petitioner and codefendant each entered a plea of guilty and were sentenced to serve seven years in the State Penitentiary.

The district judge testified that he was advised by the sheriff that the petitioner was only 17 years of age before the petitioner and his codefendant were brought before him for arraignment. That when the petitioner appeared in open court, he (the district judge) went into great detail advising him and his codefendant of all their rights, including their right to trial by jury, right to be represented by counsel, and the right to have 24 hours time in which to plead to the information. That he had the county attorney read the information to the accused in open court. That the petitioner only spoke four or five times while he was in the courtroom and the only words which he spoke were either yes or no in response to questions asked him by the judge. That he did not inquire of the petitioner as to the residence of his parents or whether they had been notified of his arrest and incarceration.

The right of one accused of crime to the assistance of counsel in the preparation of his defense has long been regarded in this country as essential to the due administration of justice in criminal cases. Our Constitution, art 2, § 20, Okla. Const., provides that in all criminal prosecution the accused "shall have the right to be heard by himself and counsel".

Our Code of Criminal Procedure provides:

"If the defendant appear for arraignment, without counsel, he must be informed by the court that it is his right to have counsel before being arraigned, and must be asked if he desire the aid of counsel. If he desires, and is unable to employ counsel, the court must assign counsel to defend him." 22 O. S. 1941 § 464.

In Polk v. State, 26 Okla. Cr. 283, 224 P. 194, it was held:

"Under our laws every person accused of felony is entitled to aid of counsel at every stage of the proceed-

ings, whether imprisoned or admitted to bail, and refusal of opportunity to procure such counsel amounts to a deprivation of a right essential to his safety."

In the case of Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139, 141, this court adopted the following provisions of law as shown by the syllabus:

"Under bill of rights, sec. 20, Okla. St. Ann. Const., an accused has the right to consult with counsel and to be fully advised as to his rights, and as to the consequences of his act before entering his plea to the indictment of information."

"A plea of guilty should be entirely voluntary, and should be made by one competent to know the consequences thereof, and should not be accepted until after the defendant has been fully advised by the court of his rights and the consequences of his plea."

"When a person is held in custody under a void order of commitment, or is imprisoned without due process of law under the sentence of any court of the state, it is not only within the authority of this court, but it is its duty upon habeas corpus to inquire into the illegality of the commitment when the matter is properly brought before it by petition, and if it be adjudged that the order of commitment was made without authority of law, the person will be entitled to a discharge from custody in order to preserve the constitutional right of all persons not to be deprived of liberty without due process of law."

"A person prosecuted for a crime may waive the rights guaranteed to him by bill of rights, relating to trial by jury, right to be heard by counsel, etc."

"Courts indulge every reasonable presumption against a waiver of fundamental constitutional rights, and do not presume acquiescence in their loss."

"Whether one accused of crime has waived his right to the assistance of counsel for his defense must depend

in each case upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused."

"Habeas corpus is an available remedy to one who has, without having effectively waived his constitutional right to the assistance of counsel, been convicted and sentenced and to whom expiration of time has rendered relief by an application for a new trial or by appeal unavailable."

"One charged with crime is as much entitled to assistance of counsel in preparing for trial, as at the trial itself."

"In a felony case, where the defendant is unable to employ counsel and is incapable adequately of making his own defense because of ignorance, feeble-mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law."

"A judgment of conviction of one who did not effectively waive his constitutional right to the assistance of counsel for his defense is void as having been rendered without jurisdiction."

"Where the accused is young, illiterate, and inexperienced in court proceedings, and charged with a felony, the court should proceed with caution. The caution to be exercised depends upon the gravity of the offense charged."

In the case of In re Stevens, 81 Okla. Cr. 65, 160 P. 2d 415, 418, it is stated in the body of the opinion:

"In Ex parte Meadows, supra, and Ex parte Barnett, 67 Okla. Cr. 300, 94 P. 2d 18, this court followed the opinion of the Supreme Court of the United States in the case of Johnson v. Zerbst, 304 U. S. 458, 58 S. Ct. 1019, 1024, 82 L. Ed. 1461, 146 A. L. R. 357, in which it is stated: 'When this right (to counsel) is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and

has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of the trial may be lost "in the course of the proceedings" due to failure to complete the court—as the Sixth Amendment requires—by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. If this requirement of the the Sixth Amendment requires—by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and one imprisoned thereunder may obtain release by habeas corpus. A judge of the United States—to whom a petition for habeas corpus is addressed—should be alert to examine "the facts for himself when if true as alleged they make the trial absolutely void." ' See, also, in this connection, Mullen v. State, 28 Okla. Cr. 218, 230 P. 285; Goben v. State, 20 Okla. Cr. 220, 201 P. 812; Ex parte Robnett, 69 Okla. Cr. 235, 101 P. 2d 645."

The facts in this case are more strongly in support of petitioner than were the facts in the cases of Ex parte Meadows, supra; Ex parte Barnett, supra; Ex parte Stinnett, 71 Okla. Cr. 184, 110 P. 2d 310; and In re Stevens, supra. Here the accused was only 17 years of age. He was born and reared in Pontotoc county. His father and grandfather had been long time residents of that county. His grandfather, who had reared the boy, had lived in the county for over 50 years and had served as justice of peace and constable. The boy was below the average of his age in intelligence and had never been charged or convicted of a criminal offense. No effort was made by the trial court to ascertain whether the boy's parents had been notified. While the parents of the youth were not known to the district judge or the assistant county attorney, they were

known to some of the officers, but they were not notified of the arrest of the petitioner.

A person can hardly read this record without being forced to the conclusion that the officers were anxious to get this boy off to prison before it became generally known that he was under arrest. It is commendable in officers to attempt to promptly apprehend and convict law violators. However, in dealing with minor defendants, the rules of criminal procedure set up requirements which must be followed. The petitioner and his codefendant stood on different ground. The codefendant, Cobb, was a mature adult; he had served time in prison; he was guilty of many offenses, and at the time of the alleged burglary was wanted for prosecution by the Federal Government. On the other hand, the petitioner was an immature youth who had never been convicted of crime. The trial judge testified that he has since heard that petitioner was a juvenile delinquent; but if such were a fact, it was not called to the attention of this court.

It is our conclusion that because of the youthfulness, illiteracy and inexperience of the petitioner, and the fact he was charged with a serious crime, was sufficient to require the court as a necessary requisite of due process of law to appoint counsel for him, even though petitioner did not ask for aid of counsel. Although a trial court upon arraignment of one accused of crime might tell the defendant of his various rights under the law, such talk is meaningless if the person accused is so youthful, ignorant and inexperienced in court proceedings that he does not understand all the court means or the nature and consequences of the proceedings through which he is passing. In Oklahoma, a person may not in a civil suit take a judgment against a minor without the appointment of

a guardian ad litem. Certainly, if the law protects the accused in his property rights in a civil case to that extent, then as equally a solemn duty should be imposed upon the court when a minor defendant is brought before him accused of a felony where his life and liberty are likely to be taken.

We are not holding that a minor defendant may not waive his right to counsel in a criminal case, but trial courts should be extremely cautious in proceeding to pronounce judgment where such a waiver is attempted to be made. We feel that some inquiry should have been made as to the residence and parentage of the youth, and where he was seeking to plead guilty without benefit of counsel, that the time for pronouncement of judgment and sentence should have been postponed until the parents or one of them was notified, and had an opportunity to determine what should be done, if anything, for the boy.

It is our judgment that the trial court lost jurisdiction to pronounce judgment against petitioner by his failure to complete the court by appointing counsel to represent petitioner before the plea was entered. Ex parte Meadows, supra.

It is therefore ordered that the judgment and sentence filed against the petitioner, John R. Cook, in case No. 3765 in the district court of Pontotoc county, and all other proceedings in said court in said cause subsequent to the filing of the information therein, be and the same are hereby vacated and set aside.

It is further ordered that the writ of habeas corpus be issued and the warden of the State Penitentiary at McAlester is hereby commanded forthwith to deliver the petitioner, John R. Cook, to the custody of the sheriff of Pontotoc county.

It is further ordered that the sheriff of Pontotoc county hold the said John R. Cook pending the disposition of the charge filed against him in case No. 3765 in the district court of Pontotoc county, or until he is otherwise discharged as provided by law in such cases.

BAREFOOT, P. J., not participating. BRETT, J., concurs.