**William JACKSON, Jr., Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–12462.**

Criminal Court of Appeals of Oklahoma.

Sept. 4, 1957.

Hall & Graham, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, Presiding Judge.

Plaintiff in error, William Jackson, defendant below, was charged by information in the District Court of Jackson County, Oklahoma, with the crime of rape in the second degree, allegedly committed on a female person of the age of fifteen years. He was tried without a jury on a plea of guilty and was sentenced to five years in the state penitentiary. Thereafter, defendant filed a motion to vacate said judgment in which he asked leave to withdraw his plea of guilty, enter a plea of not guilty, and stand trial. The court overruled said motion, from which this appeal has been perfected.

Briefly, the record discloses the victim of the alleged crime was a white girl, a hitch-hiker on her way to visit relatives in the south. She was stranded, about 4:00 or 5:00 a. m., on the road to the north of Altus, where the defendant and two other negro soldiers returning from Oklahoma City to Altus saw her flagging them down. The record discloses she got into the automobile and rode into Altus with these soldiers. On arrival in Altus, the only record before us reveals she asked to be taken to a negro hotel, which was done, and a room procured for her. The state charges the defendant had sexual relations with her. He denies that he had such relations with her, although he admits he was in bed with her. He related she kept her clothes on. This is the most unbelievable part of the defendant's story, but the case is not here for review on the merits and such matters therefore are not for our consideration at this time.

The defendant makes the contention that he was denied due process of law in both the preliminary hearing and on the arraignment in the District Court. It appears from the record before us in the Justice of the Peace Court transcript that the defendant was represented by counsel, Mr. Ryan Kerr, and that he was accorded a preliminary hearing in which witnesses were sworn both for the state and the defendant. The Justice of the Peace found probable cause to believe the crime of rape had been committed and that it had been committed by the defendant. Thus, the defendant was bound over to the District Court for trial. This delineation he denies, but he offers little convincing proof to the contrary. In fact, we are of the opinion that the record conclusively shows the defendant had the aid of counsel at the preliminary hearing and was accorded due process in that proceeding, his contention to the contrary notwithstanding.

On the arraignment in the District Court, the essential facts appear as follows. On November 16, 1956, three days before the arraignment was to be had, the defendant, twenty two years old and without prior court experience, was brought before the District Court for arraignment. The minutes of the court on arraignment appear as follows:

"11–16–1956

"1943 State v. William Jackson

"State appeared by County Attorney

"Defendant appeared in person.

"County Attorney reads Information. Defendant states name correct in Information; Defendant told of right of additional time to plead, right of trial by jury, right to be represented by an attorney.

"Defendant enters plea of not guilty; withdraws plea of not guilty; enters plea of guilty. Sentenced to five years at McAlester. Defendant states he is twenty-two years of age; defendant states he has funds to pay attorney."

In addition thereto, it appears the case was set for trial on November 19, 1956, of which fact the defendant notified his relatives expecting they would arrange rep-

resentation for him by counsel. On November 16, after entering his plea of not guilty, he was taken by Lt. Eckert and Lt. Walter, both members of the legal staff of the Altus Air Force Base, to the County Attorney's office for a conference. This action was taken because of his statement in open court that he had money with which to employ counsel. The trial judge told them to step out, "and come back and let me know your decision." In this connection, the defendant testified that Lt. Eckert told him to take a five year sentence, which, it was indicated, the County Attorney would recommend. The defendant said Lt. Eckert told him: "We want to keep this thing as quiet as we can." The Lt. denied he ever told him to plead guilty, but did admit, "I might have stated in my opinion that it was the best thing to do." It was Lt. Eckert's impression that they were to bring back a decision about the employment of counsel. Lt. Walter corroborated this impression and testified further that there was no one representing the defendant in the court on the arraignment. While they were in the County Attorney's office, they talked to Mr. Kerr, who had represented him in the preliminary hearing. The record does not reveal the nature of this conversation and does not show why Mr. Kerr did not appear at the arraignment. It only appears that Lts. Eckert and Walter were trying to arrange counsel for the defendant and were to report back to the court as to the result. Lt. Walter further testified that he never did know that the defendant intended to enter a plea of guilty until after it was done and said that the defendant at no time "indicated his intention to change his plea from not guilty to guilty." The record discloses that before the officers could advise the court, the defendant stepped up and entered his plea of guilty.

The defendant testified he did not enter a plea of guilty. He said he told the court when he was brought back into the court room, "I'm not guilty, I don't care what you do." This is strongly denied by the state. The defendant alleged there were threats he might receive the death penalty or be subjected to mob violence.

The trial court was convinced there was no credible evidence to support these allegations. On the basis the plea was voluntarily made, no threats or duress was used to obtain it, the trial court overruled the motion for new trial.

It clearly appears in the record that the trial court advised the defendant of his right to additional time to plead, right to trial by jury, and the right to aid of counsel. Yet, it further appears that the defendant stated he had money to employ counsel and that he first entered a plea of not guilty. The weakness of the record from the standpoint of the state is it does not show any inquiry on the part of the trial court as to why the defendant's plea was changed in determining the basis for the new plea and as to whether it was voluntary on his part and unequivocal. The fact is evident that at no time on the District Court arraignment was the defendant represented by counsel of his own choice or given ample opportunity to procure such representation. Nor, was any attorney appointed to represent him. (Which, of course, would have been improper if he had expressed a desire for counsel of his own choice. He only had the volunteered aid of counsel of the officers from the Altus Air Force Base.) Proper inquiry by the trial court might have established a clear and conclusive basis for finding there was unequivocal waiver of aid of counsel and jurisdiction for acceptance of a plea of guilty. But, this record is silent as to the trial court's explanation, if any, of the consequences of a plea of guilty.

In Ex parte Cornell, 87 Okl.Cr. 2, 193 P.2d 904, 906, this Court said:

"Under Bill of Rights (Art. 2, § 20, Okl.Const.) an accused has the right to consult with counsel and to be fully advised as to his rights and as to the consequences of his act before entering his plea to the indictment or information.

"A plea of guilty should be entirely voluntary, and should be made by one competent to know the consequences thereof, and should not be accepted until after the defendant has been fully advised by the court of his rights and the consequences of his plea."

Ex parte Cook, 84 Okl.Cr. 404, 183 P.2d 595. Moreover, this Court has also held:

"It is fundamental in criminal law that a defendant is entitled to aid of counsel of his own choice, when able to employ one, and * * * this right is not limited to the trial alone but extends to every stage of the proceeding."

Duncan v. State, 89 Okl.Cr. 325, 207 P.2d 324, 330. In the body of the opinion at page 330 of 207 P.2d it was further said:

"If he is able to employ counsel the choice is a personal right of which he cannot be deprived by arbitrary action. It is ordinarily secured to him by express constitutional and statutory provisions. Moreover, the right to be represented by counsel of his own choice is a valuable one, the denial of which is held to be fundamental error. 64 C.J. § 246."

Nowhere in this record does it appear that a report was made to the trial court that this defendant, William Jackson, Jr., was financially unable to hire counsel of his own choice.

The fact that the defendant had the counsel of the Air Force officers by no means fulfills the constitutional right to counsel of his own choice. The trial court should have explored to the fullest the defendant's capabilities as to whether he was able and desired to hire counsel of his own choice. Furthermore, he should have explored to the fullest the reasons for the accused's sudden change of plea. Likewise, the possibility of defendant's relatives employing counsel for trial should have been explored. These were all matters that should not have been lightly regarded. A thorough inquiry by the trial court on these points might have lifted this case from the realm of speculation. It might have disclosed the necessity for a continuance, and, on the other hand an unequivocal waiver of the aid of counsel as well as an unequivocal, free, and voluntary plea of guilty.

In Von Moltke v. Gillies, 332 U. S. 708, 68 S.Ct. 316, 321, 92 L.Ed. 309, beginning at page 318, the Supreme Court of the United States made the following applicable pronouncements of law:

"A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. * * * Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences."

"A waiver of the constitutional right to the assistance of counsel is of no less moment to an accused who must decide whether to plead guilty than to an accused who stands trial. * * * Prior to trial an accused is entitled to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered."

"It is the solemn duty of a * * * judge before whom a defendant appears without counsel to make a thorough inquiry and to take all steps necessary to insure the fullest protection of this constitutional right at every stage of the proceedings. * * * This duty cannot be discharged as though it were a mere procedural formality."

"Arraignment is too important a step in a criminal proceeding to give such wholly inadequate representation to one charged with a crime. The hollow compliance with the mandate of the Constitution at a stage so important as arraignment might be enough in itself to convince one like petitioner, who previously had never set foot in an American courtroom, that a waiver of this right to counsel was no great

loss—just another legalistic formality. * * *

"To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

\*　　\*　　\*　　\*　　\*　　\*

"The right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the interests of his client. Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 [699]. Before pleading guilty this petitioner undoubtedly received advice and counsel about the indictment against her, the legal questions involved in a trial under it, and many other matters concerning her case. This counsel came solely from government representatives, some of whom were lawyers. * * *

"The Constitution does not contemplate that prisoners shall be dependent upon government agents for legal counsel and aid, however conscientious and able those agents may be. Undivided allegiance and faithful, devoted service to a client are prized traditions of the American lawyer. It is this kind of service for which the Sixth Amendment makes provision. And nowhere is this service deemed more honorable than in case of appointment to represent an accused too poor to hire a lawyer, even though the accused * * * may be charged with an offense which is peculiarly abhorrent.

\*　　\*　　\*　　\*　　\*　　\*

"Of course an accused 'in the exercise of a free and intelligent choice, and with the considered approval of the court * * * may * * * competently and intelligently waive' his right to the assistance of counsel guaranteed by the Sixth Amendment. * * * There must be both the capacity to make an understanding choice and an absence of subverting factors so that the choice is clearly free and responsible."

Such are the similar provisions of Art. 2, § 20, Okl.Const., and 22 O.S.1951 § 13. Also, Thurmond v. State, 57 Okl.Cr. 388, 48 P.2d 845.

██ In light of the foregoing facts and authorities, we can neither reasonably conclude that the waiver of counsel was clearly free and responsible, nor that the plea of guilty was freely and voluntarily or unequivocally made. Certainly, we cannot say the defendant was represented by counsel of his choice, particularly in face of the unrefuted evidence that the defendant had means with which to employ counsel. Moreover, we cannot conclude that the advice of the Air Force officers met the constitutional standards. Hence, without constitutional aid of counsel for the defendant, the trial court had not completed all the acts necessary to confer jurisdiction for acceptance of the plea and imposition of sentence.

For the foregoing reasons, the judgment and sentence herein imposed is reversed and vacated and the case remanded for a new trial.

POWELL and NIX, JJ., concur.