Ex parte KERMIT SNOW.

No. A-10854.    July 30, 1947.

(183 P. 2d 588.)

424

Hubert Hargrave, of Wewoka, for petitioner.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for respondent.

BRETT, J. This is an original proceeding for writ of habeas corpus, brought by Kermit Snow in which he

alleges, in his petition, that he is unlawfully imprisoned and restrained of his liberty in the Oklahoma State Penitentiary at McAlester, Okla., by the warden thereof.

He specifically alleges that the cause thereof is a judgment, sentence and commitment issued by Honorable John L. Norman, who was then district judge of Okfuskee county, Okemah, Okla., on the 26th day of August 1932. He contends said judgment, sentence, and commitment are null and void, for the reason that the court lost jurisdiction to pronounce judgment and impose sentence and order him committed to the penitentiary because of the denial of the petitioner's constitutional rights.

The foregoing contention is based upon the following allegations, to wit: That at the time of his arrest he was a minor of the age of 19 years, an ignorant farm boy with only a third grade education, barely able to read and write, never having been any distance from home, and wholly without experience in court. He further alleges that within an hour after said criminal charge was lodged against him, on August 22, 1932, he was taken before the justice of the peace, without being permitted to talk to an attorney; that he did not know he was waiving a right to counsel, and was not represented by an attorney at said preliminary examination.

That he was thereupon placed in jail where he continued in confinement until August 26th when he was brought before the district court, Judge John L. Norman presiding, and informed that he was charged by information with robbery with firearms; that the court advised him he was entitled to counsel but did not advise him that counsel would be furnished without cost to him. Moreover, he complains that he was not advised of his right to trial by jury, and that the jury had the right to fix the

penalty in the event of a finding of guilt. Finally, he says, by reason of the foregoing allegations, the court lost jurisdiction to pronounce judgment and sentence against him.

In support of the petition he attaches thereto a copy of the original complaint, filed in the justice of the peace court which shows the defendants waived their right to a preliminary examination. Moreover, he attaches a copy of the information filed in the district court, and a copy of what he designates the minutes of the court but which in fact are not the court minutes, but a copy of the appearance docket in said case. Also attached to the petition is a transcript of evidence taken before Honorable W. A. Lackey, judge of the district court of Pittsburg county, Okla., to whom said petition was first presented, and after hearing thereon, denied. In this record, the defendant testified in such manner as to support the allegations of his petition. In addition thereto, he gave testimony to the effect that the assistant county attorney, Mr. C. C. Counts, advised him it would be easier for him if he would plead guilty, and allegedly stating that he had five other charges against him if he took his case to court. (This is specifically denied by Mr. C. C. Counts in his affidavit, reference to which will be hereinafter made.) He admitted that the court may have told him he was entitled to an attorney and that they read off something to him; that he did not know he had a right to have his sentence delayed for two days. He said that someone was making a record of what was said and done. He further testified that thereafter he was sentenced by the court to 25 years in the penitentiary. On cross-examination, he admitted that Governor Marland granted him a parole on March 28, 1938. He admitted that while he was out on parole he was sentenced to six years in the

penitentiary from Seminole county for another offense. The fact is, he was convicted of manslaughter for the death of a five-year old girl whom he ran down while driving an automobile in an intoxicated condition. He admitted that the state now has a hold-over placed against him which he must satisfy when the sentence he is now serving for 25 years is completed.

The petitioner's mother, Mrs. Minnie Snow, testified that she and her husband went to see their son on Wednesday and the county authorities would not let them see him because it was not "visiting day" and she returned home. She said she tried to get him a lawyer on Thursday and when she came back later, her boy was gone. She further testified she did not think his father got to see him. (These statements are controverted in the affidavit of Mr. C. C. Counts, reference to which will be hereinafter made.)

To the petition, a rule to show cause was issued. To the rule to show cause the state filed its response, alleging that the petitioner was held under a valid judgment and sentence for the crime of robbery with firearms for which he was sentenced to 25 years, and further alleging that the court had jurisdiction to enter said judgment and sentence against the petitioner and that the judgment and sentence was unsatisfied. Moreover, alleging that the petition did not state facts sufficient to warrant the granting of the writ. In support thereof, the state submits the affidavit of John L. Norman, trial judge, the pertinent portions of which, given under oath, are as follows, to wit:

"That he was from 1905 until 1935 a resident of Okfuskee County, State of Oklahoma; that he is now and has been since January, 1935, a practicing attorney and residing at Okmulgee, Oklahoma; that he was from 1921

to 1935 continuously one of the District Judges of the 22nd. Judicial District of Oklahoma, composed of Creek, Okmulgee and Okfuskee Counties; that he personally remembers the fact that one Kermit Snow plead guilty before him as such District Judge in the District Court of Okfuskee County, Oklahoma, at Okemah, to the crime of robbery with fire arms and that on such plea affiant sentenced him to a term in the state penitentiary; affiant does not personally remember the date of such plea and sentence but is informed that it was on the 26th. day of August, 1932; that after such a lapse of time affiant does not remember the details surrounding said plea of guilty and sentence, but he does distinctly know that it was affiant's invariable practice while serving in such capacity as District Judge upon the appearance of any defendant for arraignment upon any criminal charge before him to inquire of the defendant before arraignment if he had any counsel (unless counsel appeared with him) and if he said he did not, that affiant then advised him before formal arraignment that he was entitled to the benefit of counsel before arraignment and plea and inquired if he desired the aid of counsel and if so and he was unable to employ counsel the court would appoint counsel for him; and if the defendant expressed a desire to plead guilty to the charge he was always informed by affiant of all his constitutional rights and that affiant never in any case accepted a plea of guilty from any defendant without first advising him fully as to his right to counsel, if he had none, and all of his constitutional rights; and never in any case did affiant accept a plea of guilty from a defendant on any criminal charge where the defendant was not represented by counsel until after he had fully informed the defendant of his right to counsel before arraignment and plea and the defendant had then informed him that he did not desire counsel and desired to plead guilty."

The state, likewise, submitted the affidavit of Honorable C. C. Counts, assistant county attorney of Okfuskee

county, Okla., the pertinent part of which reads as follows, to wit:

"Affiant remembers talking to the defendant Snow in the jail but denies Snow's testimony to the effect that affiant told him he would file four or five more charges against him if he did not plead guilty or made any promises or threats against him.

"Snow and *Martin* were taken before Justice of the Peace O. P. Nash and waived preliminary hearing. They were not represented by counsel.

"On August 26, 1932, Snow and *Martin* were arraigned before John L. Norman, District Judge. Affiant was present representing the State. Neither of the defendants had an attorney. Affiant got the impression from talking to them and their folks that they were too poor to employ lawyers and were guilty and might as well plead guilty and throw themselves on the mercy of the court and get the business over with."

The statements contained in the foregoing affidavit of Honorable John L. Norman are substantiated by a certified copy of the court's minutes in case No. 1248, styled, State of Oklahoma v. Kermit Snow and George Morgan, as the same appeared in the Okfuskee county district court as of August 25, 1932, and reads as follows, to wit:

"District Court having been opened in due form this the 25th day of August, 1932, Judge John L. Norman, Presiding, the following among other proceedings were had and entered, to wit:

"No. 1248

"State of Oklahoma
        vs.
"Kermit Snow and George Morgan

        "Robbery with Firearms

"Case called for arraignment. State present by Coun-

ty Attorney. Defendants each present in person, but without counsel, and each defendant informed by the court of their right to counsel before arraignment, whereupon defendant Snow informs the court that he is negotiating for counsel, but could not be ready for arraignment today; and defendant Morgan informs the court that he does not desire counsel, but desires to wait until August 26, 1932 for arraignment and plea; whereupon the court passed arraignment of both defendants till August 26, 1932 at 10 O'Clock A. M., and remanded defendants to the custody of the Sheriff."

We note here that the defendant not only knew of his right to counsel but advised the court that his mother was negotiating for counsel. His mother's testimony hereinbefore referred to leads us to believe that she had talked to her son about a lawyer. Further, the minutes of the court as of August 26, 1932, reads as follows, to wit:

"District Court having been opened in due form this the 26th day of August, 1932, Judge John L. Norman, Presiding, the following among other proceedings were had and entered, to wit:

"No. 1248

"State of Oklahoma
        vs.
"Kermit Snow and George Morgan.

"Robbery with Fire Arms

"Case called for arraignment. State present by County Attorney. Defendants each present in person, but each without counsel. The Court again informs defendants of their right to counsel and each of the defendants inform the court that they do not desire counsel. Defendant Kermit Snow arraigned and disclosed his true name to be Kermit Snow. Information read to defendant Snow in open court by the County Attorney at the Court's direction; whereupon the Court asks defendant if he is ready

to plead at this time or desired time to plead, whereupon defendant informed the court that he waived time to plead and was ready to plead at this time and now enters his plea of guilty to the charge laid against him in the Information herein, to-wit: Robbery with Fire Arms; whereupon the Court asks defendant if he was ready for Judgment and Sentence at this time or if he desired time therefor; whereupon defendant stated that he waived time for Judgment and Sentence and asked that same be pronounced at this time. Defendant George Morgan is arraigned and discloses his true name to be George Morgan. Information is read to defendant George Morgan in open court by the County Attorney at the Court's direction; whereupon the court asks defendant if he is ready to plead at this time or desired time to plead, whereupon defendant informed the court that he waived time to plead and was ready to plead at this time and now enters his plea of guilty to the charge laid against him in the Information herein, to-wit: Robbery with Fire Arms; whereupon the Court asked defendant if he was ready for Judgment and Sentence at this time or if he desired time therefor; Whereupon defendant stated that he waived time for Judgment and Sentence and asked that same be pronounced at this time. It is the Judgment and Sentence of the Court that defendant Kermit Snow be imprisoned in the State Reformatory at Granite, Oklahoma. for a term of twenty-five (25) years from the date of his reception at said institution and pay one half of the costs of this prosecution. Defendant remanded to the custody of the Sheriff to be forthwith transported to said institution and delivered to the warden thereof to serve said Judgment and Sentence. Defendant advised of his right of appeal, and appeal bond fixed in the sum of $25,000.00. It is the Judgment and Sentence of the Court that defendant George Morgan be imprisoned in the State penitentiary at McAlester, Oklahoma, for a term of twenty-five years from the date of his reception at said institution and pay one half of the costs of this prosecution. Defendant remanded to the custody of the Sheriff to be forthwith

transported to said institution and delivered to the warden thereof to serve said Judgment and Sentence. Defendant advised of his right of appeal, and appeal bond fixed in the sum of $25,000.00."

The petitioner testified in the hearing upon his petition in the district court that someone was making a record of what the judge was reading to him and what took place in the courtroom. These minutes support the petitioner's testimony in this regard.

The minutes, the affidavit of Judge Norman, the applicable portion of the affidavit of Mr. C. C. Counts refute the substantial allegations of the petitioner's petition and the testimony of himself and his mother that he was denied the right to counsel, time to plead and the time allowed by statute before sentence was pronounced against him, and the implication that he was without the aid or assistance of his parents. The minutes are much more complete than the ordinary court minutes. We are inclined to take judicial notice that even though the minutes in the case at bar are full and complete, they only substantially reflect what actually took place in the courtroom.

Under the holdings of this court, special weight should be given to the minutes. The recorded record is not nearly so unreliable as faulty memory, even though memory may be buttressed about by the best of intentions. Suffice it to say, that is one of the principal reasons for having written records, and providing for their preservation. Interested parties, years later, may retire to the written record for a confirmation of what happened at a given time and place. Where the record was properly recorded as in the case at bar, this court will give great weight thereto in the settlement of disputed

questions based thereon. In Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139, 141, this court said:

"Where a disputed question arises as to what occurred upon arraignment of one accused of a crime, this court will give great weight to the recitation in the minutes of the court proceedings as to what occurred."

In Ex parte Barnett, 67 Okla. Cr. 300, 94 P. 2d 18, and in the Meadows case, supra, certain well-defined principles were set forth governing cases of this character, such as the following:

" 'Under Bill of Rights, Sec. 20, Okla. St. Ann. Const., an accused has the right to consult with counsel and to be fully advised as to his rights, and as to the consequences of his act before entering his plea to the indictment or information.'

" 'A plea of guilty should be entirely voluntary, and should be made by one competent to know the consequences thereof and should not be accepted until after the defendant has been fully advised by the court of his rights and the consequences of his plea.' * * *

" 'A person prosecuted for a crime may waive the rights guaranteed to him by Bill of Rights, relating to trial by jury, right to be heard by counsel, etc.'

" 'Courts indulge every reasonable presumption against a waiver of fundamental constitutional rights, and do not presume acquiescence in their loss.'

" 'Whether one accused of crime has waived his right to the assistance of counsel for his defense must depend in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' "

In Johnson v. Zerbst, 304 U. S. 458, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 146 A. L. R. 357, the United States Supreme Court said:

"The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

Viewing this case upon its own merits, certain conclusions appear definite and certain. The minutes disclose the petitioner was advised of his rights. Moreover, we believe the petitioner knew of his right to aid of counsel or his parents would not have considered the matter of obtaining counsel and the petitioner would not have advised the court that they were negotiating for counsel. Moreover, we believe that the petitioner knew of his right to trial by jury or he would not have sought the aid of counsel to try his case before a jury. Moreover, we believe in light of the affidavit of Mr. C. C. Counts that the petitioner, after consulting with his parents relative to the matter of counsel, determined that they did not care to employ counsel. We do not believe he was denied counsel by the court, but was persuaded by his parents against getting counsel. This conclusion is confirmed by the affidavit of Mr. C. C. Counts. At the time he was arraigned in district court we believe that he effectively waived the right to counsel and to a trial by jury, and the other rights which he complains he was denied, in his petition. In Re Stevens, 81 Okla. Cr. 65, 160 P. 2d 415, 418, this court said:

"In Ex parte Meadows, supra, and Ex parte Barnett, 67 Okla. Cr. 300, 94 P. 2d 18, this court followed the opinion of the Supreme Court of the United States in the case of Johnson v. Zerbst, 304 U. S. 458, 56 S. Ct. 1019, 1024, 82 L. Ed. 1461, 146 A. L. R. 357, in which it is stated: 'When this right (to counsel) is properly waived, the assistance of counsel is no longer a necessary element of the

court's jurisdiction to proceed to conviction and sentence. * * *."

We are convinced that petitioner was not rushed as appeared to be the case in Ex parte Meadows, supra, upon which he relies.

If the foregoing facts and conclusions were not sufficient grounds upon which to deny a writ of habeas corpus, we do not believe that we would be justified in granting the writ in any event, due to the lapse of 15 years of time. Under such circumstances, we are not unmindful, as Judge Jones so aptly put it in Ex parte Meadows, supra, that, "a great proportion of those incarcerated in the Penitentiary would be willing to swear to almost anything to secure their release." Timely relief, however, should be given to a right timely asserted but when permitted to become clouded by time, with attendant lapse of memory, dislocation of witnesses, the loss of records and the grim hand of death, justice may require the denial of such rights; because, under such circumstances, the rights sought to be asserted may become mere matters of speculation based upon faulty recollection or figments of imagination, if not outright falsification. For that reason, the doctrine of laches should apply to one who thus delays the assertion of his rights. See, in this connection, 39 C. J. S., Habeas Corpus, § 76, page 620, wherein it is said:

"* * * where as a result of such delay the judge who presided at the trial has no recollection of what occurred with respect to the relators representation by counsel, and witnesses for the prosecution are either dead or not to be found, and there are no notes of the testimony, it has been held that a petitioner will be barred from seeking discharge from imprisonment by habeas corpus on the ground that he was not informed of his right to have counsel and was not so represented."

In Commonwealth ex rel. Quinn v. Smith, 144 Pa. Super. 160, 19 A. 2d 504, 506, it is said:

"But in any event, we are of the opinion that his delay in making this application until such a great length of time had elapsed that the judge who presided at the trial has no recollection of what occurred there, as respects the relator being represented by counsel, or requesting the appointment of counsel, or refusing or waiving the appointment of counsel for him, and five of the six witnesses for the prosecution at the trial have died or cannot be found, and the sixth has no recollection of the trial of the case, there being no stenographic notes or notes of testimony of the trial, convicts him of such laches as to call for a refusal of the prayer of his petition, and prevents his discharge from confinement."

To say the least, we are of the opinion that after 15 years' delay, such a case, to form a basis for relief by habeas corpus must be founded upon proof that is clear and convincing. The evidence in support of the petition, in the case at bar, when considered in light of the minutes and the supporting affidavits, offered by the state, does not present a situation, clear and convincing, such as to entitle the petitioner to relief by habeas corpus.

Moreover, the petitioner now stands committed on the judgment and sentence on the charge and conviction of manslaughter from Seminole county. Under the authority of Ex parte Baldridge, 81 Okla. Cr. 300, 164 P. 2d 253, 254, we would not be justified in granting his release under the circumstances herein involved, as was said in that case:

"Where petitioner stands committed on unsatisfied judgments, other than the one upon which he is seeking his release on habeas corpus, the writ of habeas corpus will be denied."

For the foregoing reasons, the writ is denied.

BAREFOOT, P. J., concurs. JONES, J., disqualified and not participating.