## Ex parte E. O. SMITH.

No. A-10899.   Dec. 15, 1947.

(187 P. 2d 1003.)

Sigler & Jackson, of Ardmore, for petitioner.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., and Charles A. Milor, County Atty., of Marietta, for respondent.

JONES, J. This is an original proceeding in habeas corpus wherein the petitioner, E. O. Smith, seeks to secure his release from confinement in the State Penitentiary.

This petitioner was charged together with Louis Beck and H. I. Campbell, with having committed the crime of perjury in the trial of the case of one Alex Rawls in the district court of Love county, upon a charge against the said Rawls of attempted rape. All three of the men were arraigned at the same time and the procedure followed was identical in each case.

The petition alleges in substance that the petitioner stands committed to the State Penitentiary to serve a term of four years by reason of a judgment pronounced by the district court of Love county, on March 30, 1946, upon a plea of guilty allegedly entered by the petitioner to the crime of perjury.

The petition alleges that the conviction and sentence is void for the following reasons, to wit: That petitioner was arrested on March 29, 1946; that he was ignorant of court proceedings and had never been in court before in his lifetime; that in a consultation with the county attorney, he was told that if he would plead guilty he would be given a suspended sentence, and that if he did not plead guilty he would be convicted and serve a term in the State Penitentiary. That he was locked up in jail and was not permitted to communicate with his family or any one else; that when he was taken before the court he was not represented by an attorney, and that he had no money with which to employ an attorney, and did not know that he could have an attorney appointed to represent him. That he pleaded guilty for these reasons, but that he was not guilty of the crime charged.

At the hearing before this court, counsel for defendant introduced as evidence in support of the petition the affidavit of the petitioner together with the affidavits of his father and his wife, which affidavits read as follows:

"My name is E. O. Smith. I am 30 years old and have lived in Love county, Oklahoma, all my life and I live with my father. I was never arrested prior to the time I was arrested upon the charge which I am now confined in the penitentiary. I was arrested on March 29 at about 10 o'clock and placed in jail. I had no attorney and did not have any money with which to employ an attorney and did not know that I was entitled to have an attorney represent me. After I was arrested I was taken before the county attorney of Love county, Oklahoma, and he then informed me that if I plead guilty that I would get a suspended sentence and if I refused to plead guilty that I would have to serve a term in the penitentiary. I had no way of knowing whether this was right or wrong and I thought he knew what he was talking about and I then plead guilty. When I was taken before the justice of the peace on Saturday morning I was not represented by any lawyer and I was not informed that I was entitled to one. At about 2 o'clock on Saturday I was taken before the district judge and was not then informed that I was entitled to an attorney or that one would be appointed for me if I had no money with which to employ an attorney. I would not have plead guilty had I not believed what the county attorney told me and I plead guilty because he informed me that I would get a suspended sentence if I plead guilty and not because I was guilty. I had no opportunity to consult my father or anyone else and did not consult with anyone prior to the time I entered my plea of guilty. I was kept in jail from the time I was arrested until I plead guilty, except for the time I was taken to the county attorney's office."

"My name is Dan Smith. I am 61 years old and I live at Thackerville, Love county, Oklahoma, where I have lived practically all my life. I am the father of E. O. Smith and I was well acquainted with the sheriff of Love county, Oklahoma, the county attorney of Love county and the district judge. I understand that E. O. Smith was arrested on or about the 30th day of March, 1946, and that he plead guilty on that date and was sentenced to the peni-

tentiary for a period of four years. I had no notice whatever of his arrest and had no opportunity to talk to him prior to the time he plead guilty. As soon as I heard of his arrest I went to see him and he then informed me that prior to the time he plead guilty in this case that the county attorney had informed him that if he would plead guilty that he would recommend a suspended sentence and that is the reason why he plead guilty."

"My name is Carmell Smith and I live in Marietta, Oklahoma. My husband, E. O. Smith, was arrested on Friday afternoon March 29, 1946, and I did not know of his arrest until later that night and the next morning I visited him in the jail and he then informed me that he was going to receive a suspended sentence and that he would be home that day. This was before he plead guilty and I only had an opportunity to talk to him for a few moments in the presence of the sheriff and his deputy."

In support of the commitment and to refute the statements of the defendant, the state introduced in evidence the minutes of the court proceedings entered at the time of the arraignment of the accused of the district court, which reads:

"Entered Plea of Guilty after being duly arraigned, Court advised him he had a right to reserve plea for 24 hours, and a right to be represented by Counsel, all of which defendant waived and entered his plea of guilty. Court advised him he had a right to have sentence deferred for 48 hours, but he could also waive that right and the Court would pass sentence immediately; to all of which he agreed.

"Therefore the Court sentenced the defendant to spend 4 years in the State Penitentiary at McAlester, Oklahoma."

Also introduced in evidence by the state was the affidavit of Judge J. I. Goins, who was the district judge who pronounced judgment and sentence against the peti-

tioner upon his plea of guilty. In said affidavit, the judge stated that at the time of the arraignment of the accused, he was fully informed by the court as to his rights under the law. He was told that he had a right to talk with a lawyer before entering his plea and that he had the further right to reserve his plea for 24 hours, but that he had the privilege, if he wished, to waive those rights and enter his plea at that time of either guilty or not guilty. That the defendant expressed a desire to waive his right to talk to an attorney, and the right to delay his entering his plea of 24 hours, and entered his plea at that time of guilty to the crime charged in the information and asked that sentence be pronounced at once. He was thereupon sentenced to serve a term of four years imprisonment in the State Penitentiary.

George Roberson, deputy sheriff of Love county, testified that he was in the office of Charles A. Miller, county attorney, on March 29, 1946, when the said Charles A. Milor was talking to E. O. Smith. The county attorney stated to E. O. Smith that he had obtained evidence as to his guilt of perjury. E. O. Smith admitted his guilt and stated that he was not in the western part of Love county on the 7th day of February, 1946, as he swore at the trial of A. R. Rawls, but that he was at the city hospital in Ardmore where his wife was confined. That Smith asked at that time to make a statement and tell about the whole affair and said he would feel better about it. No threats, duress or promises of any kind were made by C. A. Milor or any one else to secure a confession from the said E. O. Smith. The county attorney advised the said E. O. Smith during the confession, after a written statement had been taken by the secretary of the county attorney, that if he wished an attorney to represent him that the

court would appoint one for him. That at no time during the time in which E. O. Smith was in the office of the county attorney did the county attorney make any promise to him that he would receive a suspended sentence if he would enter a plea of guilty. The deputy sheriff further testified that he was present the next day on March 30, 1946, when all three of the defendants, Smith, Beck and Campbell, appeared before Judge Goins and entered their plea of guilty. The witness corroborated the affidavit of' Judge Goins as to the accused being advised of all their rights before they entered their pleas of guilty, but that Smith and each of the other men told the court that they did not want an attorney, but that they wanted to enter their pleas of guilty and get it over.

Spyker Black, justice of the peace, Marietta district, Love county, Oklahoma, testified that he was present at the time E. O. Smith made a sworn statement to the county attorney concerning his guilt of perjury. That at no time while Smith was in the county attorney's office did the county attorney promise him that he would receive a suspended sentence, but on the contrary the county attorney told the accused that the judge would fix his punishment at some period of time from 2 to 20 years. That after the stenographer had prepared the statement as given to her by E. O. Smith, the county attorney asked him to read it and as to whether those were the facts and that if he wanted to sign as his own free will and act that he could do so. That Smith signed the statement. That later all three defendants, Smith, Campbell and Beck were arraigned before him as justice of peace upon a complaint charging them with perjury; that Dan Smith, the father of E. O. Smith, accompanied him to the office and was present throughout all the proceedings. That he advised the de-

fendants of their various rights, including the right to have 24 hours before making a plea. That they could talk to an attorney before entering a plea and could have a preliminary examination, but that each of said defendants wanted to enter a plea of guilty and have the proceedings sent on up to the district court.

Ruth Glasco, the stenographer who took the written statement of the defendants, corroborated the other witnesses as to the circumstances surrounding the taking of the written statement and specifically stated that no threats nor promises of any kind were made to secure the confession or to induce a plea of guilty.

Charles A. Milor, county attorney of Love county, swore that:

"On the 29th day of March, 1946, in company with one Orren Wester, Sheriff of Love county, I went to the Ardmore Hospital where I obtained conclusive evidence that E. O. Smith had committed perjury in the trial of Alex Rawls. We returned to Marietta that morning and arrested E. O. Smith, about 8 o'clock. E. O. Smith was brought to my office. I showed him the evidence we obtained of his guilt of perjury. Smith was brought to my office by Deputy Sheriff George Robinson of Love county, and at no time was George Robinson out of my presence. E. O. Smith admitted his guilt in the face of this conclusive evidence, which showed he was not in the western part of Love county, as he had testified, but that he was in Ardmore at the hospital with his wife. He asked to make a statement and make a clean breast of the whole thing; said he would feel better about it. His statement was taken by Lavon Griffith, and Speaker Black, George Robinson and myself were present. No threats, duress or promises were used as inducement to secure this confession. In fact, the said E. O. Smith was warned that he would not receive a suspended sentence under any circumstances. He was advised of his right to counsel and to

trial, which he said that he did not want. He was returned to the jail and visited by his wife and members of his family. George Robinson, myself and Dan Smith, the boy's father, were present at one visit, just before he went before the justice of the peace, at which time I advised his father that it would be impossible for me to recommend a suspended sentence for E. O. Smith. He was advised of his right to counsel by his father at that time. He was then advised by the justice of the peace at the preliminary hearing of all his rights, and the complaint was read to him. At no time was a suspended sentence mentioned by myself. He was also advised that if he could not employ an attorney, one would be appointed for him by the court. He was so advised by the justice of the peace and the district judge, J. I. Goins. He signed a confession and was taken before district judge J. I. Goins in the latter part of the afternoon of the 30th approximately at five o'clock. His father and a number of spectators were present. He there entered his plea of guilty after being fully advised by the court.

"Louis Beck was picked up on the 29th at approximately 9 o'clock and brought to my office. I advised him of the fact that E. O. Smith had entered a plea of guilty and signed a confession. I at no time suggested that he enter a plea of guilty, nor did I ask him to make a confession. He entered his plea of guilty in the justice court and in the district court after being fully advised by both judges of all of his rights.

"H. I. Campbell was arrested by the sheriff and George Robinson, and brought to my office, where he voluntarily made a full confession of guilt. No threats, duress or promises were used as inducement to secure his confession. He made this confession after being fully advised by myself as to all of his rights.

"H. I. Campbell, Louis Beck and E. O. Smith were all taken before the justice of the peace and the district judge at the same time, and each and every one of them were advised of their right to an attorney, and at no time

were they advised that there was any possibility of their receiving a suspended sentence."

It has been held that the remedy of habeas corpus is available wherever it has been found that the court in which the petitioner was convicted had no jurisdiction to try him, or that in its proceedings petitioner's constitutional rights were denied. Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139; Ex parte Stinnett, 71 Okla. Cr. 184, 110 P. 2d 310.

In Ex parte Meadows, supra, this court held [70 Okla. Cr. 304, 106 P. 2d 141]:

"In a felony case, where the defendant is unable to employ counsel and is incapable adequately of making his own defense because of ignorance, feeble-mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law.

"A judgment of conviction of one who did not effectively waive his constitutional right to the assistance of counsel for his defense is void as having been rendered without jurisdiction.

"Where a disputed question arises as to what occurred upon arraignment of one accused of a crime, this court will give great weight to the recitation in the minutes of the court proceedings as to what occurred."

A strong presumption of legality attaches to any judgment and sentence which is regular upon its face. To overcome such presumption in a proceeding in habeas corpus in which it is alleged that in the proceeding before the trial court at the time the judgment and sentence was pronounced, the court lost jurisdiction to pronounce the sentence by reason of the denial of some of the constitutional rights of the accused, the burden is upon the peti-

tioner to establish his right to release by clear and convincing proof.

In the instant case there is a conflict in the evidence of the petitioner and that of the state. There is also a conflict in the statement of the petitioner and that of his wife in that the petitioner swore that he was not allowed to see or communicate with any person prior to the time he entered his plea of guilty; while his wife testified that she talked to the petitioner before he was taken before the justice of peace at the time of the preliminary examination.

After a thorough consideration of all of the facts and circumstances surrounding the arrest, the filing of charges, the arraignment of the accused, the plea of guilty and sentence, we are of the opinion that the petitioner has failed to sustain the burden of showing by clear and convincing proof that in the proceedings before the district court, the court lost jurisdiction to pronounce sentence by reason of a failure to advise the defendant of his constitutional rights in connection with the charge which had been filed against him.

The writ of habeas corpus is therefore denied.

BAREFOOT, P. J., and BRETT J., concur.