## Ex parte RAY STORY.

No. A-11102. Feb. 16, 1949.

(203 P. 2d 474.)

360

Champion, Champion & Wallace, of Ardmore, for petitioner.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for respondent.

BRETT, J. This is a petition for a writ of habeas corpus brought by Ray Story wherein he complains that he is restrained of his liberty and unlawfully imprisoned at the Oklahoma State Penitentiary at McAlester, Oklahoma, by C. P. Burford, warden of said penitentiary.

That the cause of said restraint is the judgment and order of commitment entered by the district court of Love county, Oklahoma, made and entered on December 22, 1945 on the petitioner's plea of guilty to the charge of rape, wherein it was adjudged that the petitioner should be confined in the State Penitentiary for a term of 99 years, and committing him accordingly.

In substance, the petitioner alleges that he was arrested on December 15, 1945, and incarcerated in the county jail at Marietta, Oklahoma; that on the 17th day of December, 1945, a complaint was filed in the county court of Love county charging him with the commission of the crime of rape in the first degree. Immediately on said date he was taken before the county judge sitting as committing magistrate. Petitioner further alleges

that he was not advised that he could have an attorney appointed for him, was not advised that he could reserve time to plead; that the meaning of a preliminary hearing and arraignment was not explained to him; that he did not enter a plea of guilty or enter a plea at the time; that notwithstanding all of this the committing magistrate entered an order setting out that the petitioner was arraigned, pleaded guilty and thereupon bound him over to the district court of Love county. He further says that the complaint was not read to him and a copy at no time was served upon him nor was he furnished with any list of the witnesses to appear against him, or informed as to his legal rights at said purported arraignment, none of which including the preliminary hearing did he waive.

He further alleges that thereafter, on the same day, to wit, the 17th day of December, 1945, an information was filed in the district court of Love county, Oklahoma, charging the petitioner with the crime of rape in the first degree; that thereafter, on the 22nd day of December, 1945, he was taken before the district court of Love county, that the information was not read to him in open court and he was not provided with a copy of it nor a list of the witnesses endorsed thereon with their post-office addresses. He further says that Mr. Crawford Cameron was appointed as his attorney on that date with whom he consulted a very short period of time; that the said attorney had investigated the case prior to the time of his appointment; that petitioner entered a plea of guilty about 30 minutes after said attorney was appointed. In this connection he alleges that it was never explained to him that he had 24 hours within which to plead; that thereafter on his plea of guilty he was sentenced to 99 years in the State Penitentiary.

Further the petitioner alleges that at the time judgment and sentence was pronounced upon him he was 19 years of age. In this connection the record discloses he became 20 years of age on December 21, 1945, the day before the judgment and sentence was pronounced.

Further he alleges that he was without experience and knew nothing of legal procedure and that in addition thereto his parents who were with him at said time had had no experience; that all of said proceedings occurred in the chambers of the said district judge.

To this petition the state made response in substance as follows, to wit, wherein, among other things, it was alleged that the petition does not state facts sufficient to warrant the release and discharge of the prisoner as prayed for, that in said petition no jurisdictional matters are raised and that all of the material allegations raised by petitioner should be raised by appeal and that the same are not propositions that can be legally raised by habeas corpus. In addition thereto, said respondent denies each and every material allegation made and contained in said petition except the admission of the judgment and sentence as was pleaded by the petitioner. The petitioner, his father and his mother testified substantially in support of the allegations of the petition.

The substantial part of the minutes of the county judge of said court recites the following facts:

"Page 214

12-17-45   Defendant being properly arraigned before the County Judge, and in the presence of the County Atty., Geo. Roberson, Dep. Sheriff, Orren Wester, Sheriff, Ona English, & M. W. Short, Court Clerk, waived preliminary hearing and entered a plea of guilty. Upon order of the County Judge, said defendant Ray Story was bound over

to District Court without bond, after being advised by the County Judge that he could consult an attorney before entering such plea. (Transferred to Criminal Appearance Docket District Court, Page 185, Book 3.)"

In support of the proceedings had before the county judge sitting as committing magistrate, the substantial part of his affidavit as a part of the record reads as follows, to wit:

"I am the County Judge of Love County, Oklahoma, and was serving as County Judge of Love County, the 17th day of December, 1945; that Ray Story appeared before me for arraignment and was fully advised by me of his constitutional rights; That I consulted with Ray Story, at some length concerning his rights in this matter. I advised him that he could consult an attorney before entering any plea. I advised him as to his right to a preliminary hearing and explained to him the purpose of a Preliminary hearing. Ray Story chose to waive preliminary hearing and entered a plea of guilty, after which I bound him over to the District Court without bond. To the best of my knowledge and belief, the parents of Ray Story were present at the Arraignment. I do know that I asked Ray Story if he had discussed this situation with his parents, and he replied that he had, and still desired to enter a Plea of Guilty.

"In Witness Whereof, I hereunto sign this 21st day of January, A. D., 1948.

"B. W. Jones, County Judge."

The affidavit speaks for itself.

In addition thereto the county attorney testified in part in the habeas corpus hearing, in relation to the proceedings before the county judge of Love county as follows:

"Q. Did you appear at the county court at the time the preliminary was set? A. I did. Q. State from your

best memory what transpired there at that hearing relative to the pertinent facts in this case. A. They brought Ray over, and I sincerely believe his father was with him at that time, but I am not definite on that. They brought Ray over, anyway, and the county judge went to some length explaining to Ray what a preliminary was and what it amounted to, and explained to him he was entitled to an attorney and possibly should consult an attorney, and Ray didn't see any use in that, wanted to get it over with as quick as he could. The judge discussed at some length withholding a plea, right to talk to an attorney, he read the complaint to him, and he entered a plea of guilty, after further discussion with the judge. The deputy sheriff, myself, the court clerk, court reporter were all the persons there, I believe—the county treasurer, as I remember, was there, possibly one or two other people loose around the courthouse. * * * Q. You had a conversation with his father and mother? A. Yes, I did. Q. Where. A. In my office Monday morning, the first thing. When I came down, Mr. and Mrs. Story were in the hall waiting for me. * * * They tried to get me not to recommend 99 years. I told them the thing to do was to talk to an attorney; they asked me about a jury trial, and I explained to them it would be tried by a jury. They asked me when it would be tried, and I told them he would probably be arraigned in county court that afternoon. They asked a number of questions. They were quite upset. They left, and then came back in about 30 minutes, and I believe they told me they had gone and talked to an attorney. I don't know how many times they came in to see me between then and the time he was sentenced, possibly three or four times. Q. You advised them fully the consequences of a plea of guilty and jury trial? A. I did then, and in the office with Mr. Cameron, their attorney, I advised them what the recommendation would be in case of a plea of guilty."

In addition thereto, the petitioner himself testified in the hearing in Greer county as follows, to wit:

"Q. While you were in the county court, Mr. Milor read the complaint to you? A. Yes, that is correct."

The foregoing constitutes a substantial delineation of the record made at the time of the preliminary hearing, and the evidence offered by the state in support thereof.

The record further discloses that on December 17, 1945, an information was filed in the district court of Love county wherein the petitioner was charged with the crime of first degree rape. Five days later, on December 22, 1945, it appears that the petitioner entered his plea of guilty in the district court after counsel had been appointed for him and was sentenced to 99 years in the Oklahoma State Penitentiary as alleged in his petition and admitted in the response thereto. The criminal appearance docket in relation thereto is in substance as follows, to wit:

"12-27-45 * * * After being properly arraigned in open court, upon a plea of guilty after consulting atty, C. W. Cameron, appointed by the Court. Said Ray Story was sentenced to 99 years at hard labor in State Penitentiary."

Furthermore, the minutes of the district court in relation thereto are in words and figures as follows, to-wit:

"Saturday, Dec. 22, 1945

State of Oklahoma
v.                           } RAPE
Ray Story

C. W. Cameron, appointed by the Court to represent the Defendant, Ray Story, owing to the fact that he was unable to employ an attorney.

Upon being properly arraigned, him his right to waive 24 hrs. leave, & pleads guilty of 1st Degree Rape, of

Mattie Martin, possibly 2 times, App. 20 years. old, will be 20 yrs. old yesterday.

Judgment and Sentence of the court, that you will be sentenced to the State Penitentiary for a period of 99 years from time of delivery to warden."

It should be observed that in this connection the minutes of the district court state that the said Ray Story being properly arraigned, did enter his plea of guilty. These minutes under the holdings of this court are subject to explanation. In this connection the affidavit of Judge J. I. Goins in substance is as follows, to wit:

"I, J. I. Goins, being first duly sworn, do upon my oath state that I was the Trial Judge and presiding in the case of State of Oklahoma v. Ray Story. That on December 22nd, 1945, the defendant, Ray Story, was brought before me as the Trial Judge upon arraignment, he being at the time charged with the crime of rape in the first degree. Upon being brought before me he was asked whether or not he was represented by counsel, and he stated that he was not. Thereupon, the court inquired of him if he desired counsel be furnished him, and he stated that he did, and then the court, at his request, appointed Crawford W. Cameron, an able and reputable lawyer and a member of the Love County Bar, to advise with, counsel, and to represent the defendant, Ray Story. During these proceedings the mother and father of the defendant were both present in court. Mr. Cameron came to the court house at the request of the court, and after he was advised of his appointment he retired to a private room and there conversed with the defendant at length. During the course of their conversation they requested the Trial Judge to come to the conference room, which I did, and Mr. Cameron, the attorney for the defendant, stated in the presence of the defendant, that the defendant was willing to plead guilty if he could be assured of receiving not more than fifty (50) years in the State Penitentiary. I advised both of them that I never gave assurances to any person as to what the penal-

ty would be prior to their plea of guilty, but it was my custom to usually follow the recommendation of the county attorney in such matters, since he had made thorough investigation, and that I would not improse a sentence of fifty (50) years under any circumstances without the recommendation of the County Attorney. Mr. Cameron advised and stated at the time that the County Attorney was insisting that a much longer sentence be imposed and was going to recommend ninety-nine (99) years. At that time I left the room, and the defendant and his attorney advised together for perhaps thirty minutes or an hour.

"Finally the defendant appeared in court with his attorney and stated that they were ready to proceed. Thereupon, the County Attorney read in open court and in the presence of the defendant and his parents and in the presence of his counsel, the information charging him with the crime of rape in the first degree. Following my usual custom in such matters, I informed the defendant that he had a right to reserve his plea for twenty-four (24) hours, that he had a right to be represented by counsel and be fully advised by him before entering his plea of guilty or not guilty to the crime as charged, Thereupon, the defendant stated that he wanted to enter his plea of guilty, and at that time his attorney stated that he had discussed the matter thoroughly with the defendant and that was his wishes in the matter.

"He was further asked at that time if it was his desire that the court pass sentence then or to wait until the expiration of some forty-eight (48) hours or more, and he stated that he had no objections to sentence being imposed at that time.

"After the defendant was fully advised of all of his legal rights, and knowing that he was well and ably represented, and that it was the desire of the defendant to enter his plea of guilty, the court then and at that time imposed a sentence of ninety-nine (99) years, whose term would begin, as I recall, at the time he was received by the warden.

"Further affiant saith not.

"J. I. Goins."

It should be observed in this connection as to the matter of the appointment of an attorney, Judge Goins' affidavit reveals that the appointment of Mr. C. W. Cameron was made at accused's request. Furthermore, the record reveals that before the aforesaid appointment was made the accused's father and mother had consulted with Mr. Cameron relative to said cause pending against the petitioner herein. The record further reveals that during the pendency of these proceedings the father and mother of the accused, petitioner herein, were in daily communication and contact with petitioner relative to this case. Moreover, the judge's affidavit shows the petitioner was thoroughly advised of his statutory and constitutional rights. Furthermore, the testimony of the county attorney in support of the said proceedings in the district court reveals that he conferred with the parents of petitioner, and advised them of his rights. In addition thereto he advised the petitioner of his rights. His testimony reveals the following state of facts in regard to the proceedings in the district court, all of which is corroborative of the Judge's affidavit:

"Q. Let's go to December 22, when you first appeared in Judge Goins' court, that day. A. The judge had been out of town. He came in and asked me about the Story case, if I was ready. I said the information had been filed for sometime, and I would like to bring him over and arraign him. I believe we set it for one or two o'clock. I went in and then they brought Ray over. His parents were there, and the judge asked him if he was represented by counsel. He said he wasn't and the judge asked him if Crawford Cameron would be all right, or C. W. Cameron—that was the gist of what he said. He said that would be fine; and they called for

Mr. Cameron. He came down; and Ray and Mr. Cameron, and I believe his father, went into the court reporter's office, which is just off the district judge's office, and they shut the door and talked quite a while, then called me in. * * *"

Thereafter follows an extended delineation by the county attorney relative to conversations between himself and Mr. Cameron who had been appointed to represent the accused, petitioner herein, relative to what kind of recommendation the county attorney would be willing to make in the event of a plea of guilty, and in which it appears that the county attorney stood steadfast in his determination not to recommend less than 99 years. Thereafter his testimony reveals:

"A. * * * I went back in the courtroom. They were in there some few minutes longer, then all came out in the judge's office. Q. What would you estimate the time they were in the court reporter's room? A. Well, it seemed to me it was, it was an hour or so, I am sure, because we went up there—the way I base the time it was set for 2 o'clock. We went up there in the office, then, at 1:30 or 2:00 whatever time it was, I know when I came back out of the court room and they were taking Ray back to jail, my wife was downstairs to meet me. She teaches school and it was bound to have been around 4 o'clock when I got out of court, some two or three hours we were upstairs. They were in the office over an hour in my opinion. Q. After they got back in the judge's office, tell what happened? A. After they got back into the judge's office, I read the information, and the judge questioned Ray, asked him what he pled, and Ray said he pleaded guilty. He asked him, as I remember—the particular thing I remember, he asked Ray what caused him to do it, and he said, 'Just lack of foresight, I guess.' He said, "You raped her two times, didn't you,' and he said that he did. Of course, before Ray entered his plea, the judge advised him he had 24 hours to plead, and Mr. Cameron said that Ray wanted to waive

the time—I believe Mr. Cameron was the one; and the Judge also told him he had 48 hours before sentence would be passed. Q. Then the judge sentenced him on your recommendation? A. Yes, the judge asked me what I recommended and I told him 99 years."

The testimony of Sheriff Orren Wester is in part in substance as follows, to wit:

"Q. What did the judge say to him? A. From the beginning? Q. Yes. A. First, he ask him if he had an attorney. I believe he told him he didn't have. He told him he would appoint him an attorney. He asked me, I am sure he asked me, to call Mr. Cameron to come and probably tell him what the case was. Q. Did he say anything to the boy as to whether Cameron would be satisfactory or not? A. I couldn't recall. Q. Cameron did come? A. Yes. Q. How long was it after Cameron got there until the judge sentenced him? A. Well, it would be hard to say, an hour to an hour and a half, something like that, I suppose. Q. When he came in for sentence, did you hear him plead? A. Yes. Q. What plea did he enter? A. He pled guilty. Q. Did you hear the county attorney do anything? A. I think the judge asked him what his recommendation would be. Q. Did the county attorney read anything? A. He read the indictment or charge. Q. Information? A. Information. Q. What did the judge say to the defendant? A. He said is your plea guilty or not guilty. Q. He pled guilty? A. Yes. Q. Anything else? A. The judge informed him of his rights * * *. Q. What rights? A. As to the fact he had 24 hours to enter a plea. He has a regular 'rigermarole' he goes over, I couldn't remember all the things he told him. I've heard him make it time after time during the twelve years and 21 days I was in office, I never heard him miss it on a plea of guilty. Q. Then sentenced him? A. Yes. Q. His attorney was there? A. His attorney, yes".

Furthermore, the testimony of Mr. C. W. Cameron, the petitioner's attorney, supports the state's contention, the substantial part of which is as follows:

"Q. (By Mr. Milor) Mr. Cameron, you were appointed by the court herein to defend Ray Story? A. I was. Q. Mr. Cameron, had you discussed this case with the Storys prior to this appointment? A. Not with the defendant, but I had with Mrs. Story and his father. Q. How long before you were appointed was that? A. I couldn't say. It was a matter of several days. Q. You were present here in the court room at the time he was arraigned and entered his plea? A. I was. Q. Did you advise Mr. Story of his rights? A. I did. Q. How long a period of time did you advise with the defendant himself? A. I don't know. I advised with him two or three times the same day I was called down at the courthouse in that afternoon. My recollection is that I talked to Mr. Story first and then later came down and investigated the case and talk with the sheriff and other people who had made the investigation. Now, that was after he had been bound over to district court. They advised me he had entered a plea of not guilty at the preliminary hearing, and apparently in the conversation there was an effort to try to get leniency as much as possible. I advised them to talk with Mr. and Mrs. Martin, inasmuch as they had been friends for a long time, to see what they could get in the way of a recommendation of leniency. They came back and advised me that the Martins said they would not take any part in it, leave it up to the court. I advised them approximately the reasonable expense in defending the case. I wasn't employed. I was called to the courthouse and Judge Goins advised me that I had been appointed to represent the defendant. He was present in the courtroom. They permitted me to take him into a room and we talked the matter over in detail. Then I left and discussed the matter with the county attorney and tried to get him to recommend 25 or 50 years. I went back and reported to the defendant that I was unable to get the county attorney to make a recommendation other than life. Then I advised the defendant that I would ask the county attorney to come in and talk with the defendant and advise him. I was present also when he talked to the county attorney. He dis-

cussed it, the nature of the evidence, and told him he would not recommend any sentence other than life. Then I had a further conference with the defendant. I advised him that he had 24 hours within which to enter a plea and that I thought it might be a good idea to wait and see what developed. He read that over a few minutes and then he said he didn't see where 24 hours would make any difference, that he would go ahead and enter his plea of guilty. We came back into the courtroom. I told the court he had decided to waive his right to wait 24 hours to plead. Q. You advised him that if he did not plead guilty he probably would get the electric chair? A. No, I did not. I advised him that if he did go to trial a jury might give him the death penalty, that that was possible. Q. You advised him that he might take time to enter his plea. A. 24 hours, yes, sir."

This court has repeatedly held that habeas corpus is limited to inquiry into the jurisdiction of the court. Ex parte Bailey, 87 Okla. 406, 198 P. 2d 660; Ex parte Barnett, 67 Okla. Cr. 300, 94 P. 2d 18; Ex parte Massengale, 67 Okla. Cr. 181, 93 P. 2d 41; In re Swaim, 66 Okla. Cr. 30, 89 P. 2d 363, and numerous other cases. The court is limited in its inquiry to the propositions of jurisdiction of the person, of the subject matter and of authority under the law to pronounce the judgment and sentence rendered. Ex parte Vanderburg, 73 Okla. Cr. 21, 117 P. 2d 550. The petitioner raises no question as to the first two requirements, he only challenges the latter. He contends that the court lost jurisdiction to pronounce judgment and sentence by failure to accord him his statutory and constitutional rights, or that he was denied due process, both in the preliminary and at his arraignment in the district court. If this be true, the court lost jurisdiction to pronounce sentence, and the petitioner would be entitled to the relief prayed for. Ex parte Stinnett, 71 Okla. Cr. 184, 110 P. 2d 310; Ex parte

Robnett, 69 Okla. Cr. 235, 101 P. 2d 645; Ex parte Smith, 85 Okla. Cr. 299, 187 P. 2d 1003. Neither the record nor the authorities support his contentions.

In relation to the petitioner's first contention relative to the hearing before the county judge sitting as committing magistrate, we are of the opinion that as to the matter of the waiver of preliminary hearing under the conditions herein involved, the petitioner's contention is without merit. As we said in the recent case of Ex parte Cartwright, 88 Okla. Cr. 206, 201 P. 2d 935, 937, wherein the proceedings pursued were identical with the case at bar:

"As to the matter of waiver of a preliminary hearing under conditions as herein involved, this court has spoken. In Sheller v. State, 58 Okla. Cr. 204, 52 P. 2d 105, this court said:

" 'Preliminary examination of accused charged with felony may be waived before committing magistrate, or entire preliminary proceedings may be waived in trial court and is waived by failure to file motion to quash or set aside information in apt time (St. 1931, §§ 2937, 2940-2942 [22 O.S. 1941 §§ 493, 496-498]; Const. art. 2, § 17.'

"See Anderson v. State, 21 Okla. Cr. 177, 204 P. 132; Cooper v. State, 31 Okla. Cr. 217, 238 P. 503; Neff v. State, 39 Okla. Cr. 133, 264 P. 649.

"This court has further held that a preliminary examination is a right accorded which the accused may waive, under Const. art. 2, § 17, prescribing 'no person shall be prosecuted * * * for a felony by information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination'. Further, where the defendant is arraigned on an information and pleads to the merits, he waives the right to a preliminary examination, or if one was held, any irregularity therein. Neff v. State, supra.

Moreover, where a defendant voluntarily entered a plea of guilty, he will be deemed to have waived any right he may have had to question the fact that he did not have a preliminary examination. And, further, where one is charged in the district court by information, and desires to raise the question of not having had a preliminary examination, this should be done by a plea in abatement, or by motion to quash the information. Sparks v. State, 71 Okla. Cr. 430, 112 P. 2d 434; Herren v. State, 72 Okla. Cr. 254, 115 P. 2d 258, 259; Stamper v. State, 25 Okla. Cr. 324, 220 P. 67; Robbins v. State, 12 Okla. Cr. 294, 155 P. 491; Quinton v. State, 10 Okla. Cr. 520, 139 P. 705, and in Ex parte Owen, 82 Okla. Cr. 415, 171 P. 2d 868, 871:

" 'We call particular attention to the case of Landon v. State, 82 Okla. Cr. 336, 166 P. 2d 781, in which it is held:

" ' "The right to have a preliminary examination is for the benefit of the accused and proper proceeding to raise question of failure to have preliminary examination is by a motion to quash or set aside the information before entering a plea to the information.

" ' "Where defendant voluntarily enters a plea to the information and goes to trial, he will be deemed to have waived any right he may have had to question the fact that he did not have a preliminary examination * * *."

"See, also, Ex parte Miller, 82 Okla. Cr. 315, 169 P. 2d 574; * * *.' " See Burchfield v. State, 85 Okla. Cr. 415, 188 P. 2d 392.

The record in this case reveals that the preliminary proceedings were not questioned by a motion to quash or to set aside the information before the plea of guilty was entered to the information in the district court. As hereinbefore indicated the attack on the preliminary proceedings therefore was not presented in apt time and is therefore without merit.

In relation to the proceedings had in the district court, we are of the opinion that the accused, petitioner herein, was represented by able counsel, and that he was not denied any of his statutory or constitutional rights. As was said in Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139, 141:

"A person prosecuted for a crime may waive the rights guaranteed to him by Bill of Rights, relating to trial by jury, right to be heard by counsel, etc."

We reannounced this rule in Ex parte Snow, 84 Okla. Cr. 423, 183 P. 2d 588. Further in the Meadows case, supra, it was said:

"Courts indulge every reasonable presumption against a waiver of fundamental constitutional rights, and do not presume acquiescence in their loss.

"Whether one accused of crime has waived his right to the assistance of counsel for his defense must depend in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

See, also, Ex parte Snow, supra. In the Meadows case it was further said:

"Habeas corpus is an available remedy to one who has, without having effectively waived his constitutional right to the assistance of counsel, been convicted and sentenced and to whom expiration of time has rendered relief by an application for a new trial or by appeal unavailable. * * *

"A judgment of conviction of one who did not effectively waive his constitutional right to the assistance of counsel for his defense is void as having been rendered without jurisdiction.

"Where a disputed question arises as to what occurred upon arraignment of one accused of a crime, this court will give great weight to the recitation in the minutes of the court proceedings as to what occurred."

The minutes herein are not as full and complete as they should be, but in the light of the foregoing record we are bound by the rule announced in Ex parte Bradley, 72 Okla. Cr. 107, 113 P. 2d 611. In the body of the opinion, 72 Okla. Cr. at page 117, 113 P. 2d at page 615, this court said:

"These minutes are not as full as they should have been under the facts as disclosed by the affidavits of the court attaches who were present at the time of the arraignment and plea of guilty by the petitioner. The presumption created by the absence of the recital of the waiver of these rights in the minutes of the court and in the journal entry of judgment and sentence, however, has been overcome by the testimony of the court officials, which shows that the proceedings upon the arraignment of the defendant were regular and that the court had jurisdiction to pronounce judgment and sentence against the accused upon his plea of guilty.

"As was said in Ex parte Meadows, supra, the question as to whether one accused of crime has waived his right to the assistance of counsel and of his other rights, which may be waived by him, must depend in each case upon the particular facts and circumstances surrounding that case, and no abstract rules of law may be set forth which will be applicable to every case."

Here, the affidavit of the district judge and the sworn testimony of the court attaches and counsel for the accused, petitioner herein, all of whom were present at the time of arraignment and plea of guilty by the petitioner, are sufficient to overcome the presumption created by the absence of the recital of the waiver of these rights in the minutes of the court, as well as the journal entry of judgment and sentence. Their sworn evidence, shows that the proceedings upon the arraignment of the defendant were regular and that the court had jurisdic-

tion to pronounce the judgment and sentence herein rendered upon the accused's plea of guilty.

We therefore are of the opinion, after a careful examination of the record of the proceeding had before the county judge sitting as committing magistrate, and the affidavits and evidence in support thereof that the accused, petitioner herein, waived such constitutional and statutory rights which he alleged were not accorded him in the proceedings therein. Furthermore, we are of the opinion that the accused, petitioner herein, by his failure to question the preliminary proceedings by a motion to quash or set aside the information before entering his plea of guilty in the district court, waived the right to question any irregularity therein.

Furthermore, we are of the opinion that, after consideration of the record and proceedings had in the district court, the record herein, including the affidavit of the trial judge, and sworn testimony of the court attaches, including counsel for the accused, petitioner herein, waived the rights he complains of and the trial court had jurisdiction to pronounce the judgment and sentence herein involved. Ex parte Marchbanks, 72 Okla. Cr. 380, 116 P. 2d 725. The petition as filed herein is without substantial merit and should be and the same is hereby denied.

JONES, P. J., and BAREFOOT, J., concur.